**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEKSANDR URAKHCHIN and NATHAN MARFICE, individually, as representatives of the class, and on behalf of the ALLIANZ ASSET MANAGEMENT OF AMERICA, L.P. 401(K) SAVINGS AND RETIREMENT PLAN,<br><br>                Plaintiffs,<br><br>        vs.<br><br>ALLIANZ ASSET MANAGEMENT OF AMERICA, L.P., ALLIANZ ASSET MANAGEMENT OF AMERICA, LLC, COMMITTEE OF THE ALLIANZ ASSET MANAGEMENT OF AMERICA, L.P. 401(K) SAVINGS AND RETIREMENT PLAN, and JOHN MANEY,<br><br>                Defendants. | CASE NO. 8:15-cv-1614-JLS-JCGx<br><br>**ORDER CONDITIONALLY GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Doc. 79)** |

## I.   **INTRODUCTION**

Before the Court is a Motion for Class Certification filed by Plaintiffs Aleksandr Urakhchin and Nathan Marfice.  (Mot., Doc. 79.)  Defendants[1] opposed and Plaintiffs replied.  (Opp., Doc. 100; Reply, Doc. 98.)  Having taken the matter under submission and considered the parties' briefs and oral argument, the Court conditionally GRANTS the Motion.

## II.   **BACKGROUND**

Plaintiffs are participants of the Allianz Asset Management of America, L.P. 401(k) Savings and Retirement Plan (the "Plan").  (Urakhchin Decl. ¶ 2, Doc. 79-35; Marfice Decl. ¶ 2, Doc. 79-36.)  The Plan is a 401(k) plan that covers eligible employees of Allianz Asset Management of America, L.P. ("AAM-LP") and its affiliates.  (Richter Decl., Ex. 1 at 1, Doc. 79-3.)  Several employers participate in the Plan, including AAM-LP, Allianz Asset Management of America, LLC ("AAM-LLC"), Allianz Global Investors Fund Management, LLC, Pacific Investment Management Company, LLC ("PIMCO"), Allianz Global Investors U.S., LLC, and NFJ Investment Group, LLC (collectively, the "Participating Employers").  (*Id.* at A-1.)  Urakhchin has been a Plan participant since 2011, and Marfice has been a Plan participant since before 2009.  (Urakhchin Decl. ¶ 2; Marfice Decl. ¶ 2.)  As of the first quarter of 2016, there were approximately 4,000 participants in the Plan.  (Richter Decl., Ex. 6 at 2, Doc. 106-3; Richter Decl., Ex. 5 at 44:11–23, Doc. 106-2.)  There are another 1,637 individuals who were Plan participants during the proposed class period but have since closed their accounts.  (Bucklin Report at 7, Doc. 101.)

AAM-LP is the Plan sponsor.  (Richter Decl., Ex. 1 at 2.)  Before September 2016, AAM-LLC appointed a single Committee to administer the Plan.  (Richter Decl., Ex. 2 at

---

[1] Defendants are Allianz Asset Management of America, L.P., Allianz Asset Management of America, LLC, Committee of the Allianz Asset Management of America, L.P. 401(k) Savings and Retirement Plan, and John Maney.

5, 51, Doc. 79-4.)  Vacancies on the Committee were filled either by AAM-LLC or the Committee.  (*Id.* at 51.)  As of September 2016, there are two Committees—an Investment Committee and an Administrative Committee— the members of which are initially appointed by AAM-LP's Human Resources Officer.  (Richter Decl., Ex. 1 at 5, 10, 50–51.)  Vacancies on these Committees are to be filled by the remaining members of the Committees, unless they fail to fill a vacancy for three months, after which AAM-LP's Human Resources Officer may fill the vacancy.  (*Id.* at 50–51.)  Since October 2009, the relevant Committees have been comprised exclusively of managers and executives of the Participating Employers, and have included no independent fiduciaries.  (Richter Decl., Ex. 4 at 269:5–24, Doc. 106-1.)

Plan participants may invest in certain designated investment options chosen by the Committee.  (Richter Decl., Ex. 7 at 3, Doc. 103-4; Richter Decl., Ex. 8 at 11, Doc. 79-10.)  These investment options are referred to as the Plan's "core line-up."  (*See* Richter Decl., Ex. 9 at 1, Doc. 106-4; Richter Decl., Ex. 5 at 68:23–69:1.)  The Plan's investment line-up is comprised exclusively of AAM-affiliated investment products.  (Pomerantz Report at 17, Doc. 104-1.)  From October 2009 to the present, the Plan's investment options have never included a non-proprietary fund.  (*Id.*; Richter Decl., Ex. 4 at 265:18–266:1.)  Plan participants who do not specifically direct their funds to be invested in any one option will have their funds invested in the Plan's default investment option.  (Richter Decl., Ex. 8 at 11.)  The current default investment option is a 50%-50% blend of Allianz and PIMCO Target Retirement Date Funds.  (Richter Decl., Ex. 7 at 5.)  Plan participants also have the option of investing their funds through the Schwab Personal Choice Retirement Account ("PCRA").  (Richter Decl., Ex. 8 at 12.)  The PCRA is a self-directed brokerage account that permits Plan participants to invest in options not provided directly under the Plan.  (*Id.*)  Although there is no annual administration fee for Plan participants who choose to invest through the PCRA, they could potentially be charged trading fees.  (*Id.*)

Plaintiffs allege that Defendants improperly managed the Plan assets for their own

benefit.  (FAC ¶ 2(a), Doc. 28.)  Specifically, Plaintiffs allege that Defendants breached their fiduciary duties by (a) selecting high-cost Allianz-affiliated investment options solely to benefit the Allianz family, (b) failing to monitor the high fees and expenses imposed on Plan participants, (c) failing to investigate lower-cost options with comparable performances, and (d) retaining high-cost investment options to the direct detriment of Plan participants.  (*Id.* ¶ 118.)  Certain emails produced by Defendants suggest that Defendants managed and selected funds for the Plan based on whether the funds would benefit Defendants and the Allianz family rather than Plan participants.  (*See, e.g.*, Richter Decl., Ex. 12, Doc. 104-2; Richter Decl., Ex. 29, Doc. 104-4; Richter Decl., Ex. 18, Doc. 106-9; Richter Decl., Ex. 19, Doc. 106-10.)  In addition, the Committee added new, untested funds to the core line-up such as the PIMCO EqS Pathfinder fund, which was added to the Plan in November 2011 with barely over a year of performance history. (Richter Decl., Ex. 25, Doc. 106-15; Richter Decl., Ex. 26, Doc. 106-16; *see also* Pomerantz Report at 27–28.)  Even though most plan sponsors use an Investment Policy Statement ("IPS") to guide their investment decisions, the Committee did not adopt an IPS until October 2014.  (Pomerantz Report at 14, 22; *see also* Richter Decl., Ex. 7.) Defendants' management of the Plan failed to keep costs in check.  (Pomerantz Report at 28–39.)  The proprietary investment options offered by the Plan were consistently more expensive than other available options.  (*See id.* at 35–39.)  On average, the fees charged by the core line-up funds were significantly higher than those reported by the Investment Company Institute ("ICI") for similar-type investments in similarly-sized plans and low-cost alternatives from Vanguard.  (*Id.* at 34.)  Gross fees for funds in the Plan were 91% higher than the ICI averages and 744% higher than the Vanguard alternatives, and net fees were 51% higher and 588% higher respectively.  (*Id.*)

Based on the above, Plaintiffs assert claims against Defendants for: (1) breach of duties of loyalty and prudence, 29 U.S.C. § 1104(a)(1)(A)–(B); (2) failure to monitor fiduciaries; and (3) other equitable relief based on ill-gotten proceeds, 29 U.S.C. §

1132(a)(3).  (FAC ¶¶ 117–33.)

Plaintiffs now seek certification of the following class pursuant to Federal Rule of Civil Procedure 23(b)(1):

> All participants and beneficiaries of the Allianz Asset Management of America, L.P. 401(k) Savings and Retirement Plan ("Plan") at any time on or after October 7, 2009, excluding Defendants, their directors, and any employees with responsibility for the Plan's investment or administrative functions.

(Mot. at 1.)  Plaintiffs also ask the Court to appoint them as Class Representatives, and to appoint Nichols Kaster, PLLP as Lead Class Counsel and Kabateck Brown & Kellner, LLP as Local Class Counsel.  (*Id.*)

## III.   <u>LEGAL STANDARD</u>

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed

in Rule 23(b)." *Dukes*, 546 U.S. at 345.  Here, Plaintiffs seek class certification under Rule 23(b)(1), which permits maintenance of a class action if prosecution of separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350.  This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351.

## IV.   **DISCUSSION**

### A.   **Standing**

As a preliminary matter, the Court addresses Defendants' argument that Plaintiffs' proposed class cannot be certified for lack of standing of all class members.  (Opp. at 10.) This Court previously addressed the standing issue when it granted in part and denied in part Defendants' motion to dismiss.  (MTD Order at 7–9, Doc. 61.)  In that order, the Court found that Plaintiffs had adequately alleged Article III standing as to all the challenged funds in the Plan, including those in which Plaintiffs did not invest, because the harm Plaintiffs allegedly suffered relates to Defendants' Plan management and fund selection process as a whole rather than the unique factual circumstances of individual

6

1   fund performance.  (*Id.* at 8–9.)  The nature of Plaintiffs' claims against Defendants

2   remains the same; the difference here is that Plaintiffs must satisfy a different standard at

3   class certification than the one they had to meet on a motion to dismiss.  *See Dukes*, 564

4   U.S. at 350 ("Rule 23 does not set forth a mere pleading standard."); *see also Lujan v.*

5   *Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (stating that each element of standing "must be

6   supported in the same way as any other matter on which the plaintiff bears the burden of

7   proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the

8   litigation").  At class certification, Plaintiffs must show standing "through evidentiary

9   proof."  *Moore v. Apple Inc.*, 309 F.R.D. 532, 538 (N.D. Cal. 2015) (quoting *Comcast*

10  *Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)) (internal quotation marks omitted).

11          The elements of standing are (1) the plaintiff suffered an injury in fact that is

12  "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2)

13  the injury is "fairly traceable" to the challenged conduct; and (3) the injury is "likely" to be

14  "redressed by a favorable decision."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985

15  (9th Cir. 2007) (en banc) (quoting *Lujan*, 504 U.S. at 560–61) (internal quotation marks

16  omitted).  Here, Plaintiffs have produced sufficient evidence to establish Article III

17  standing.  Plaintiffs' exhibits contain several statements suggesting that Defendants

18  manage and select funds for the Plan based on whether the funds would benefit Defendants

19  and the Allianz family rather than the Plan participants.  (*See, e.g.*, Richter Decl., Ex. 12;

20  Richter Decl., Ex. 29; Richter Decl., Ex 4 at 265:18–266:24; Richter Decl., Ex. 18; Richter

21  Decl., Ex. 19.)  Plaintiffs' expert, Steven Pomerantz, has submitted an expert report

22  concluding that, among other things, Defendants' management of the Plan results in

23  investment options that, on average, charge higher fees than Plan participants otherwise

24  would pay if Defendants were to consider and select funds outside the Allianz family.

25  (Pomerantz Report at 34–39.)  Regardless of which specific funds Plaintiffs invest in,

26  Defendants' alleged mismanagement of the Plan harms Plaintiffs by limiting Plaintiffs'

27  investment options to those that are more expensive on average than those available in the

28

7

1  market as a whole.  Plaintiffs could opt to invest through the PCRA, but that would expose

2  them to trading fees that they would not have to pay if cheaper investment options were

3  available directly through the Plan.

4        Defendants raise several arguments as to why standing fails as to the other unnamed

5  class members.  (Opp. at 10–13.)  These include arguments that some putative class

6  members invested solely through the PCRA, and that even for Plan participants who

7  invested in the core line-up, Plaintiffs have failed to show that each of the participants

8  suffered losses to their individual accounts.  (*Id.* at 10–12.)  Defendants also argue that

9  many putative class members cannot seek injunctive relief, either because they are no

10 longer Plan participants or, with respect to the default investment option, because they

11 have never invested in the default option.  (*Id.* at 12–13.)  However, contrary to

12 Defendants' contention, "[i]n a class action, standing is satisfied if at least one named

13 plaintiff meets the requirements."  *Bates*, 511 F.3d at 985 (citation omitted).  Moreover,

14 "[d]istrict courts in California routinely hold that the issue of whether a class

15 representative 'may be allowed to present claims on behalf of others who have similar, but

16 not identical, interests depends not on standing, but on an assessment of typicality and

17 adequacy of representation.'"  *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530

18 (C.D. Cal. 2011) (citing cases).

19       Therefore, Defendants' arguments against standing are more appropriately

20 addressed in the context of typicality and adequacy, and the Court concludes that Plaintiffs

21 have established standing here.

22  **B.**   **Rule 23(a) Requirements**

23     **1.**   **Numerosity**

24       Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

25 impracticable."  Fed. R. Civ. P. 23(a)(1).  In general, "classes of forty or more are

26 considered sufficiently numerous."  *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 587 (C.D.

27 Cal. 2011) (citations and internal quotation marks omitted).  Here, Plaintiffs have

28

1   submitted evidence that there were approximately 4,000 participants in the Plan as of the

2   first quarter of 2016.  (Richter Decl., Ex. 6 at 2; Richter Decl., Ex. 5 at 44:11–23.)

3   Defendants do not contest that Plaintiffs meet the numerosity requirement.  In fact, their

4   expert states that there are another 1,637 individuals who were Plan participants during the

5   proposed class period but have since closed their accounts.  (Bucklin Report at 7.)

6          Accordingly, the numerosity requirement is met.

7          **2.      Commonality**

8          Rule 23(a)(2) requires that "there are questions of law or fact common to the class."

9   Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class

10  members have suffered the same injury."  *Dukes*, 564 U.S. at 349–50 (citation and internal

11  quotation marks omitted).  The plaintiff must allege that the class's injuries "depend upon

12  a common contention" that is "capable of classwide resolution."  *Id.* at 350.  In other

13  words, the "determination of [the common contention's] truth or falsity will resolve an

14  issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "What

15  matters to class certification . . . is not the raising of common questions—even in droves—

16  but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive

17  the resolution of the litigation."  *Id.* (citation and internal quotation marks omitted)

18  (emphasis in original).  Rule 23(a)(2) is met so long as there is "a single *significant*

19  question of law or fact" common to the class.  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d

20  952, 957 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589

21  (9th Cir. 2012)) (internal quotation marks omitted); *accord Dukes*, 564 U.S. at 359.

22         Here, Plaintiffs contend that there are common questions as to whether Defendants

23  imprudently selected investment options for the Plan; whether those investment options, on

24  average, charged excessive fees compared to alternative investment options; whether

25  Defendants' management of the Plan was affected by serious and ongoing conflicts of

26  interest; whether Defendants chose certain investment options to maximize the financial

27  benefits that would accrue to themselves rather than to maximize the financial benefits to

28

1  Plan participants; whether Defendants administered the Plan with the requisite care, skill,

2  prudence, and diligence; and whether Defendants' actions constituted a breach of fiduciary

3  duties.  (Mem. at 15–16, Doc. 104.)  Defendants do not contest Plaintiffs' contention.

4       The Court concludes that Plaintiffs' proffered common questions satisfy Rule

5  23(a)(2).  Resolution of those questions in Defendants' favor will terminate this litigation

6  in their favor, while resolution against Defendants will likely establish their liability, with

7  only the issue of damages to be determined.  Here, "the common focus is on the conduct of

8  Defendants . . . . Plaintiffs' claims do not focus on injuries caused to each individual

9  account, but rather on how the Defendants' conduct affected the pool of assets that make

10  up the [Plan]."  *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008).  Thus, the

11  commonality requirement is met.

12       **3.    Typicality**

13       Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be]

14  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The typicality

15  requirement looks to whether the claims of the class representatives [are] typical of those

16  of the class, and [is] satisfied when each class member's claim arises from the same course

17  of events, and each class member makes similar legal arguments to prove the defendant's

18  liability."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation and internal

19  quotation marks omitted).

20       Plaintiffs' claims are typical of the proposed class inasmuch as they produced

21  evidence showing that Defendants select funds for the Plan based on whether the funds

22  would benefit Defendants and the Allianz family rather than Plan participants, and that

23  Defendants' management of the Plan results in investment options that, on average, charge

24  higher fees than Plan participants otherwise would pay if Defendants were to consider and

25  select funds outside the Allianz family.  (*See, e.g.*, Richter Decl., Ex. 12; Richter Decl., Ex.

26  29; Richter Decl., Ex 4 at 265:18–266:24; Richter Decl., Ex. 18; Richter Decl., Ex. 19;

27  Pomerantz Report at 34–39.)  Plaintiffs' claims and the facts from which they arise are the

28

same as those of the proposed class members.

That the Plan participants may have separate individual accounts, invest in different funds, and obtain different returns on their investments (positive or negative), does not change the nature of their claims or the legal arguments they would make to prove Defendants' liability.  "Courts within the Ninth Circuit have repeatedly concluded that the typicality requirement was satisfied in defined contribution cases despite the fact that 'participants have individual accounts and select their investment fund from a variety of available options.'"  *In re Northrop Grumman Corp., ERISA Litig.*, No. CV 06-06213 MMM (JCx), 2011 WL 3505264, at *10 (C.D. Cal. Mar. 29, 2011) (citing cases).  Nor does the fact that some Plan participants may have profited from their investments defeat typicality.  *In re Computer Scis. Corp. ERISA Litig.*, No. CV 08-02398 SJO (JWJx), 2008 WL 7527872, at *2 (C.D. Cal. Dec. 29, 2008) (citing cases).  Regardless of which funds a particular Plan participant invested in, whether he or she did so through the core line-up or through the PCRA, or why he or she invested in those funds, each Plan participant was investing through the same menu of investment options selected by Defendants.  That Plaintiffs may need to engage in a fund-by-fund analysis to prove Defendants' liability does not change the fact that such an analysis would prove Defendants' liability as to the entire proposed class.  "Although the losses attributable could differ from participant to participant, individual damages should not defeat typicality."  *Kanawi*, 254 F.R.D. at 110.

Defendants' reliance on *Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011), is unavailing.  In *Spano*, the Seventh Circuit held that "a class representative in a defined-contribution case would at a minimum need to have invested in the same funds as the class members."  *Id.* at 586.  Defendants rely on *Spano* to argue that Plaintiffs' proposed class is overbroad and creates conflicts of interest between class members that defeat typicality and adequacy in this case.  (Opp. at 16–18.)

The Ninth Circuit has not adopted the Seventh Circuit's test[2], and a district court discussing *Spano* noted that "*Spano* reflects a heightened sensitivity to speculative conflicts among class members that is contrary to the law of this Circuit."  *In re Northrop Grumman*, 2011 WL 3505264 at *11 n.72.  The conflicts that Defendants assert are just that—speculative.  Defendants argue that there are Plan participants who have no complaints about the funds offered by the Plan and would be harmed by injunctive relief removing those funds from the Plan's menu.  (Opp. at 17–18.)  However, such a conflict necessarily depends on what kind of relief is ultimately awarded by the Court, and the Ninth Circuit has stated on more than one occasion that potential future conflicts are insufficient to deny class certification.  *See, e.g.*, *Soc. Servs. Union, Local 535, Serv. Emps. Int'l Union, AFL-CIO v. Cty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979) ("Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification."); *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) ("[C]ourts have generally declined to consider conflicts . . . sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit."); *see also Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts.").

Accordingly, the Court finds typicality is satisfied here.

### 4.    Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2)

---

[2] In an opinion that was later vacated by the Supreme Court, the Ninth Circuit declined to rule on whether the Ninth Circuit should also adopt a rule "akin to that articulated in *Spano*." *Tibble v. Edison Int'l*, 729 F.3d 1110, 1127 (9th Cir. 2013), *vacated by Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015).

will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

        a.   <u>Class Representatives</u>

The Court first considers whether Plaintiffs have any conflicts with the proposed class. As noted above, Plaintiffs' claims are virtually co-extensive with the proposed class members, and Defendants' arguments of intra-class conflict are too speculative to defeat class certification. Although Plaintiffs may continue to invest in certain funds offered by the Plan, and may even believe certain Plan funds are not imprudent investments, that is not inconsistent with the position that the Plan as a whole is mismanaged by Defendants. Indeed, Plaintiffs' actions are consistent with the actions of rational Plan participants investing, to the best of their ability, in what they perceive to be the best investments from the limited options available. Plaintiffs have stated that they are unaware of any conflicts of interest with other class members and have described the extent of their participation in the action to date. (Urakhchin Decl. ¶¶ 5, 7; Marfice Decl. ¶¶ 5, 7.)

Defendants assert that both Plaintiffs have little understanding of their duties as class representatives and have done little to participate in this case. (Opp. at 9 n.22–23.) Specifically, Defendants cite to deposition excerpts reflecting that Urakhchin does nothing to monitor his lawyers and has no understanding of whether key allegations in the FAC are true, and that Marfice doubts whether he had ever seen a full copy of the FAC or the original complaint before his deposition. (*Id.*) However, Plaintiffs cite to other portions of their depositions where they testify that their case is about the Plan's high fees and limited investment options, that Defendants engage in the practice of adding new, unproven funds to the Plan to raise money for those funds, and that Defendants have managed the fund against the Plan participants' best interests. (Reply at 13–14.) Plaintiffs even cite to a portion of Urakhchin's deposition where he testifies in detail regarding the procedural posture of the case and that Plaintiffs are seeking class certification. (*Id.* at 13.)

Considering the evidence as a whole, Plaintiffs have shown sufficient knowledge of

and participation in this case to satisfy the adequacy requirements of Rule 23(a)(4).  Courts have approved class representatives in other defined-contribution plan class actions based on similar evidence.  *See, e.g.*, *In re Northrop Grumman*, 2011 WL 3505264, at *14–15; *Tibble v. Edison Int'l*, No. CV 07-5359 SVW (AGRx), 2009 WL 6764541, at *6 (C.D. Cal. Jun. 30, 2009).  Moreover, the Ninth Circuit "has never imposed a knowledge requirement on proposed class representatives," *Tibble*, 2009 WL 6764541, at *6 (citing *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 118 (C.D. Cal. 2007)), and "[c]ourts are reluctant . . . to deny class certification on the basis that the class representatives lack sophistication," *In re Northrop Grumman*, 2011 WL 3505264, at *14 (citing cases); *see also Tibble*, 2009 WL 6764541, at *6 (stating that a lack of a knowledge requirement "is especially appropriate in a case such as this involving complicated matters of ERISA law").

The Court therefore concludes that Plaintiffs "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

b.      Class Counsel

As to the adequacy of Plaintiffs' counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiffs submit declarations setting forth the qualifications of their proposed class counsel.  (*See* Mem. at 19–20.)  However, Plaintiffs' ask the Court to appoint as class counsel, not individual attorneys, but two law firms—Nichols Kaster, PLLP and Kabateck Brown & Kellner, LLP.  (Mot. at 1.)  Litigation is ultimately done by individual attorneys, not law firms.  The Court cannot analyze the qualifications of as-yet unidentified attorneys

14

1   at a law firm, and for that reason, appoints lawyers, not law firms as class counsel.

2      Therefore, the Court reserves ruling on the adequacy of class counsel pending

3   supplemental declarations from Plaintiffs identifying the individual attorneys who are to

4   serve as class counsel in this case.

5   **B.    <u>Rule 23(b) Requirements</u>**

6      In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy

7   one of the three subsections of Rule 23(b).  Fed. R. Civ. P. 23(b).  Plaintiffs seek

8   certification under Rule 23(b)(1).  "Classes certified under [Rule 23](b)(1) . . . share the

9   most traditional justifications for class treatment—that individual adjudications would be

10  impossible or unworkable . . . ."  *Dukes*, 564 U.S. at 361.  "Most ERISA class action cases

11  are certified under Rule 23(b)(1)."  *In re Northrop Grumman*, 2011 WL 3505264, at *15

12  (quoting *Kanawi*, 254 F.R.D. at 111).  "ERISA [fiduciary] litigation . . . presents a

13  paradigmatic example of a (b)(1) class."  *Kanawi*, 254 F.R.D. at 112 (citation and internal

14  quotation marks omitted).

15     A class action may be maintained under Rule 23(b)(1) if prosecution of separate

16  actions by individual class members would create a risk of:

17
18      (A) inconsistent or varying adjudications with respect to individual class
           members that would establish incompatible standards of conduct for
19         the party opposing the class; or
        (B) adjudications with respect to individual class members that, as a
20         practical matter, would be dispositive of the interests of the other
           members not parties to the individual adjudications or would
21         substantially impair or impede their ability to protect their interests[.]
22

23  Fed. R. Civ. P. 23(b)(1).  "Rule 23(b)(1)(A) considers possible prejudice to a defendant,

24  while 23(b)(1)(B) looks to prejudice to the putative class members."  *Kanawi*, 254 F.R.D.

25  at 111.  Here, the Court finds that Plaintiffs may certify a class under Rule 23(b)(1)(B).

26  **1.    Rule 23(b)(1)(B)**

27     Rule 23(b)(1)(B) "is concerned only with the rights of unnamed class members, not

28

with the rights of [the defendants]." *McDonnell-Douglas Corp. v. U.S. Dist. Court for Central Distr. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975).  The rule covers cases in which judgment in an individual action "inescapably will alter the substance of the rights of others having similar claims." *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 467 (9th Cir. 1973).  A "classic" example of such a case is one charging "a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (citation and internal quotation marks omitted).  In such a case, "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Id.* at 834.

Plaintiffs note that the fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively.  (Mem. at 21.)  Accordingly, Plaintiffs seek relief for the Plan as a whole, including an order enjoining Defendants from further violations of their fiduciary responsibilities, an order compelling Defendants to "make good to the Plan" all losses that the Plan incurred as a result of their breaches of fiduciary duties, and other appropriate relief such as appointing independent fiduciaries to manage the Plan, replacing imprudent mutual funds with prudent alternative investments, and removing Plan fiduciaries who have breached their fiduciary duties.  (*Id.* at 21, 21 n.21.)

Were the proposed class members to seek this relief in individual actions against Defendants, a judgment in any one action would necessarily affect the rights and interests of the other class members.  Because Defendants cannot manage the Plan in an individualized fashion for each Plan participant, whatever injunctive relief an individual plaintiff obtains would be applied to the Plan as a whole.  A judgment for one Plan participant that orders investment options be removed or added to the Plan, requires fiduciaries be replaced or independent fiduciaries be added, or imposes new requirements

16

on Defendants' fund selection process, necessarily will either dispose of or substantially affect the claims of the other Plan participants.

The same result arises with Plaintiffs' requested monetary relief.  Plaintiffs seek monetary relief for the Plan as a whole based on the theory that Defendants breached their fiduciary duties to the Plan by improperly managing the Plan assets for their own benefit.  (*See* FAC ¶ 2(a).)  If this claim were brought by an individual Plan participant, any judgment on Defendants' liability would necessarily affect the determination of any claim for monetary relief for this same conduct brought by other Plan participants in any concurrent or future actions.

Relying on *Dukes*, Defendants argue that Plaintiffs' cannot certify a class under Rule 23(b)(1) because the lack of notice and opt-out procedures violates due process in an action asserting claims of individualized damages.  (Opp. at 20–21.)  However, *Dukes* was a case about certifying a Rule 23(b)(2) class for claims of individualized damages.  *See Dukes*, 564 U.S. at 342, 360–62.  Here, Plaintiffs are seeking to certify a class under Rule 23(b)(1), and they seek monetary relief for the Plan, not individual Plan participants.  (*See* FAC, Prayer for Relief.)  After a lump sum payment is made to the Plan, the Plan fiduciaries will distribute the lump sum to Plan participants.  (Mem. at 21 n.21; Reply at 16–17.)  Other courts have certified 23(b)(1) classes in similar cases where the plaintiffs sought monetary relief for defined-contribution plans as a whole which then would be distributed among plan participants by the plan fiduciaries.  *See, e.g.*, *In re Northrop Grumman*, 2011 WL 3505264, at \*11, \*18; *Kanawi*, 354 F.R.D. at 109, 111.  Moreover, the Court may include additional procedural protections should it determine that due process concerns arise from the lack of notice and opt-out procedures.  *See Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994) ("[A] court in its discretion may provide for an opt-out or notice.").

Defendants' reliance on *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), is unavailing as well.  The Court in *LaRue* held that although Section 1132(a)(2) of

ERISA "does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  *Id.* at 256.  Defendants argue that because *LaRue* permits Plan participants to bring individual actions to recover losses to their individual accounts, resolving one Plan participant's individual claim would not impede any other Plan participant's individual action.  (Opp. at 24.)  However, just because a Plan participant could bring an individual action under *LaRue* does not mean that resolution of that individual case would not substantially impair or impede the ability of other Plan participants to pursue their own actions.  As already noted, Plaintiffs' theory of liability is common to the proposed class and pertains to the manner in which Defendants mismanaged the Plan and breached their fiduciary duties with respect to the Plan as a whole.  Given that Defendants' alleged mismanagement of the Plan is the same as to all Plan participants, resolution of one action against one Plan participant would necessarily affect the resolution of any concurrent or future actions by other Plan participants.

Accordingly, the Court concludes that class certification under Rule 23(b)(1)(B) is appropriate.  However, the Court finds that Plaintiffs' proposed class must be modified in light of their request for injunctive relief.  Former Plan participants do not have standing to seek injunctive relief because they are not "realistically threatened" by Defendants' future breaches of fiduciary duties.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  Plaintiffs' proposed class does not distinguish between current and former Plan participants.  (Mot. at 1.)  Therefore, the Court concludes that it is necessary to define Plaintiffs' proposed class under Rule 23(b)(1)(B) as one for monetary relief only and to certify a separate, injunctive relief sub-class consisting of only current Plan participants.

### 2.     Notice and Opt-Out

Although notice and opt-out are not required for Rule 23(b)(1) classes, "a court in its discretion may provide for an opt-out or notice."  *Crawford*, 37 F.3d at 487 n.2.  The Court finds an opt-out procedure would be inappropriate here as it "would undermine the

1   policies behind (b)(1) . . . certification." *Eubanks v. Billington*, 110 F.3d 87, 94–95 (D.C.
2   Cir. 1997).  However, given the due process concerns raised by Defendants in their
3   Opposition, (Opp. at 22–23), the Court considers provision of notice to class members
4   appropriate in this case.

6   **IV.   <u>CONCLUSION</u>**

7        For the foregoing reasons, the Court GRANTS the Motion for Class Certification,
8   with the following terms and conditions:

9        (1) The following Rule 23(b)(1) classes are CERTIFIED under 29 U.S.C. §§
10   1109(a), 1132(a)(2), and 1132(a)(3):

> **Monetary Relief Class:** All participants and beneficiaries of the Allianz
> Asset Management of America, L.P. 401(k) Savings and Retirement Plan
> ("Plan") at any time on or after October 7, 2009, excluding Defendants, their
> directors, and any employees with responsibility for the Plan's investment or
> administrative functions.

> **Injunctive Relief Class:** All current participants and beneficiaries of the
> Allianz Asset Management of America, L.P. 401(k) Savings and
> Retirement Plan ("Plan"), excluding Defendants, their directors, and any
> employees with responsibility for the Plan's investment or administrative
> functions.

20        (2) Plaintiffs Aleksandr Urakhchin and Nathan Marfice are APPOINTED as class
21   representatives.

22        (3) The Court reserves its ruling on appointing class counsel pending supplemental
23   declarations from Plaintiffs identifying the individual attorneys who are to serve as class
24   counsel in this case.  Plaintiffs shall file the supplemental declarations addressing the
25   Court's concerns **within five (5) days** of the date of this Order.

26        (4) The Court directs the parties to meet and confer, and to submit an agreed-upon
27   form of class notice that will advise class members of, among other things, the relief

1  sought and their rights to intervene, submit comments, and contact class counsel.  The

2  parties shall also jointly submit a plan for dissemination of the proposed notice.  The

3  parties shall work together to generate a class list to be used in disseminating class notice.

4  The parties are advised to review the Federal Judicial Center's checklist for class action

5  notices, available at www.fjc.gov, before drafting the proposed notice and plan of

6  dissemination.  The proposed notice and plan of dissemination, along with a proposed

7  order approving or denying the parties' proposal, shall be filed with the Court on or before

8  **July 14, 2017**.

9

10  DATED: June 15, 2017

11

12  _____

13  HON. JOSEPHINE L. STATON
   UNITED STATES DISTRICT JUDGE