1   KABATECK BROWN KELLNER LLP
    Richard L. Kellner, CA Bar No. 171416
2   rlk@kbklawyers.com
    644 South Figueroa Street
3   Engine Company No. 28 Building
    Los Angeles, CA 90017
4   Telephone: (213) 217-5000
    Facsimile: (213) 217-5010
5
    Kai H. Richter, MN Bar No. 0296545*
6   krichter@nka.com
    Paul J. Lukas, MN Bar No. 22084X*
7   Lukas@nka.com
    Carl F. Engstrom, MN Bar No. 0396298*
8   cengstrom@nka.com
    Jennifer K. Lee, NY Bar No. 4876272*
9   jlee@nka.com
    NICHOLS KASTER, PLLP
10  80 South 8th Street, Suite 4600
    Minneapolis, MN 55402
11  Phone: (612) 256-3200
    Fax: (612) 338-4878
12  *admitted *pro hac vice*

13  Attorneys for Plaintiffs and the Class

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17  ALEKSANDR URAKHCHIN, *et al.*, | Case No. 8:15-cv-01614-JVS-JCG |
| 18              Plaintiffs, | **CLASS ACTION** |
| 19        v. | **JOINT STIPULATION REGARDING DISCOVERY DISPUTE** |
| 20  ALLIANZ ASSET MANAGEMENT OF AMERICA, L.P., *et al.*, | Date:          September 21, 2017 |
| 21              Defendants. | Time:          10:00 A.M. |
| 22 | Courtroom:   6A |
| 23 | **DISCOVERY MATTER** |
| 24 | Judge:        Hon. Josephine L. Staton |
| 25 | Magistrate Judge:  Hon. Jay C. Gandhi |
| 26 | |
| 27 | Fact Discovery Cutoff:  Aug. 15, 2017 |
| 28 | Pretrial Conference:    Dec. 15, 2017 |
| | Trial Date:    Jan. 9, 2018 |

# **TABLE OF CONTENTS**

I.    Plaintiffs' Introductory Position ........................................................ 1

II.   Defendants' Introductory Position  ................................................... 3

III.  Plaintiffs' Position ........................................................................... 6

    A.   The Court Should Order that the 15(c) Reports Be Produced, Consistent with Other Cases ................................................................. 6

        1.   The 15(c) Materials Are Relevant Because They Contain Defendants' Own Assessment of the Profitability and Relative Expense and Performance of Funds in the Plan .......................... 7

        2.   Defendants' Objections to Producing the 15(c) Reports Are Meritless ......................................................................... 8

    B.   The Court Should Order the Production of 19 Documents on Defendants' Privilege Log, or Review them *in Camera* to Determine Whether the Fiduciary Exception to the Attorney-Client Privilege Applies ............. 10

        1.   The Communications Occurred Prior to the Instant Lawsuit, Before Any Known Adversity of Interest Between the Plan's Fiduciaries and Participants ......................................... 12

        2.   There Is No Evidence or Reason to Believe the Content of the Communications Falls Outside the Fiduciary Exception ............ 13

IV.   Defendants' Position ...................................................................... 14

    A.   Plaintiffs' Motion Should Be Denied as Untimely ............................. 15

    B.   Plaintiffs' Request for 15(c) Documents Should Be Denied as a Substantive Matter .................................................................. 16

        1. Background ................................................................... 16

            i.   The 15(c) Process .................................................... 16

            ii.   Defendants' Objections ..................................... 18

JOINT STIPULATION REGARDING DISCOVERY DISPUTE

2.  The 15(c) Documents Are Irrelevant to the Claims in this Case ................................................................... 19

3.  The Request for 15(c) Documents is Overbroad and Producing the Documents Would Be Unduly Burdensome and Not Proportional to the Needs of the Case ............................................................ 22

C.  Plaintiffs' Request for the Privileged Documents Should Be Denied .. 24

1.  The Fiduciary Exception to the Attorney-Client Privilege ......... 24

2.  The Privileged Documents Concern Personal Legal Advice Regarding Potential Liability and So the Court Should Not Order Their Disclosure ............................................................... 25

JOINT STIPULATION REGARDING DISCOVERY DISPUTE

Plaintiffs Aleksandr Urakhchin and Nathan Marfice (collectively, "Plaintiffs"), and Defendants Allianz Asset Management of America L.P., Allianz Asset Management of America LLC (collectively, "AAM"), the Committee of the Allianz Asset Management of America, L.P. 401(k) Savings and Retirement Plan (the "Retirement Committee"), and John Maney (collectively, "Defendants," and, together with Plaintiffs, the "Parties") respectfully submit this Joint Stipulation regarding the Parties' discovery dispute.

## I.   Plaintiffs' Introductory Position

This is certified class action involving claims under the Employee Retirement Income Security Act ("ERISA") against 401(k) plan fiduciaries. *See ECF No. 108* (Order granting class certification). In summary, Plaintiffs allege that Defendants have used the Allianz Asset Management of America, L.P. 401(k) Savings and Retirement Plan ("Plan") "as an opportunity to promote AAM's mutual fund business and maximize profits at the expense of the Plan and its participants." *First Am. Complaint ¶ 5, ECF No. 28 ("FAC")*. Plaintiffs allege that Defendants have done this by, among other things, loading the Plan with exclusively "high-cost proprietary mutual funds as investment options," which has "cost Plan participants millions of dollars in excess fees every year." *Id.* Plaintiffs further allege that Defendants selected and retained these investments because they "would contribute to the Allianz Family's bottom line." *FAC ¶ 118*. Plaintiffs seek, among other relief, to recover losses to the Plan and disgorgement of any profits associated with Defendants' breaches of their fiduciary duties. *FAC ¶¶ 120.*[1]

Plaintiffs submit this joint stipulation to compel Defendants to produce two

---

[1] The disgorgement remedy that Plaintiffs seek against the Plan's fiduciaries in Count 1 (asserted under 29 U.S.C. § 1109) is distinct from their claim for equitable relief in Count 3 (asserted under 29 U.S.C. § 1132), which the Court dismissed against certain non-fiduciary defendants in its Order on Defendants' motion to dismiss. *See ECF No. 61.*

1    sets of documents. ***First***, Plaintiffs seek reports prepared pursuant to Section 15(c)

2    of the Investment Company Act, 15 U.S.C. § 80a-15(c) ("15(c) reports") relating to

3    the performance, expense, and profitability of AAM mutual funds in the Plan from

4    2009 to the present. These reports contain information about the profitability and

5    performance—relative and absolute—of every mutual fund offered by AAM,

6    including those in the Plan.  This information is relevant to Plaintiffs' claims of

7    breach of fiduciary duty and should be produced.  Indeed, earlier this month, another

8    court ordered such 15(c) materials to be produced in a similar ERISA case involving

9    the same counsel on both sides. *See Wildman v. Am. Century Servs., LLC*, No. 4:16-

10   CV-00737-DGK, ECF No. 106 at 5-6 (W.D. Mo. July 27, 2017) (attached as Richter

11   Decl. Ex. 5).  These types of reports also were ordered produced in second case

12   involving ERISA claims relating to use of affiliated funds in a 401(k) plan. *See*

13   *Krueger v. Ameriprise Fin., Inc.*, 2013 WL 12139425, at *2 (D. Minn. Aug. 15,

14   2013).  There is no reason why such reports should not be produced here.

15        Second, Plaintiffs seek certain documents on Defendants' privilege log

16   because they fall within the fiduciary exception to the attorney-client privilege.

17   "[T]he fiduciary exception provides that one acting in the capacity of ERISA

18   fiduciary is disabled from asserting the attorney-client privilege against plan

19   beneficiaries on matters of 'plan administration.'" *In re Northrop Grumman Corp.*

20   *ERISA Litig.*, 2010 WL 11468584, at *8 (C.D. Cal. June 29, 2010). Although this

21   exception does not apply to communications between Plan fiduciaries and their

22   counsel regarding the defense of a lawsuit, no lawsuit had been filed at the time the

23   relevant communications were written (principally in 2011 and 2012), and the

24   context for these communications indicates that the analysis of "potential liability"

25   contained in the documents was used (at least in part) for the purpose of evaluating

26   the Plan's investment philosophy and determining how the Plan's investments

27   should be managed going forward.  Accordingly, the Court should order that these

28

-2-

documents regarding "potential liability" be produced, or at a minimum, review them *in camera* to determine whether the fiduciary exception applies.

## II.   Defendants' Introductory Position

During the long and expensive fact discovery process in this action, Defendants produced to Plaintiffs over 160,000 pages of documents, including all materials reviewed during the putative class period by the committee responsible for selecting the investments challenged in this case (the "Committee").   These documents include hundreds of documents subject to the attorney-client privilege, but that nevertheless fall under the fiduciary exception to that privilege, that Defendants have produced following careful reviews.   Defendants have also made seven witnesses available for deposition, including current and former Committee members and officers of Defendants.

The record demonstrates that Plaintiffs' baseless allegations that the Committee "treat[ed] the Plan[2] as an opportunity to promote the Allianz Family's mutual fund business" and included expensive and poorly performing funds as Plan investment options (First Am. Compl. ("FAC") ¶¶ 5-6) have no merit.   Instead, the factual record demonstrates that the Committee acted, at all times, in the best interests of Plan participants, followed a conscientious and impartial process, and chose outstanding funds with reasonable fees and expenses that are among the most widely held funds in 401(k) plans across the country.   For example, the Plan's core lineup of investment options includes the PIMCO Total Return Fund, the second most-widely held fund in 401(k) plans nationwide, and four other funds in the Plan's core lineup are among the top 105 funds in 401(k) plans. [3]   As Defendants' forthcoming expert reports in support of their motion for summary judgment will demonstrate, 13 of the 25 largest retirement plans in the country, and four of the top

---

[2] Allianz Asset Management of America L.P. 401(k) Savings and Retirement Plan.

[3] Confidential Expert Report of Walter Torous (Mar. 31, 2017), Dkt. No. 89-3 ("Torous Report") ¶ 71.

1    five, offer PIMCO and AllianzGI mutual funds as investment options for their

2    participants.  In fact, the largest 401(k) plan in the country, sponsored by IBM, holds

3    more assets in PIMCO and AllianzGI funds than does the Plan.  Investors in and

4    outside of retirement plans have invested more money this year in PIMCO funds, as

5    of July 2017, than any other active mutual fund manager[4]—yet Plaintiffs here

6    challenge the Plan's holdings of these same, popular funds.

7           Now, well after fact discovery closed on August 15, 2017, and on the same

8    date that summary judgment is to be filed, Plaintiffs move to compel Defendants to

9    produce additional fact documents that are both irrelevant and burdensome to

10   produce, or that Defendants properly withheld as privileged (the "Motion").

11          This Motion is untimely and should be dismissed at the outset for that reason

12   alone.  Even if the Court were to reach its substance, Plaintiffs' requests should be

13   denied for two principal reasons.

14          ***First***, the documents prepared for separate entities (independent mutual fund

15   directors) for separate purposes (Section 15(c) of the Investment Company Act

16   ("ICA"), 15 U.S.C. § 80a-15(c) ("15(c) Documents")) are voluminous and

17   completely irrelevant to Plaintiffs' allegations about what the Committee did or did

18   not do.  As Plaintiffs implicitly concede, these documents were never received,

19   reviewed, or considered by the Committee.  The information in them, including

20   profitability data, therefore could not have influenced the Committee's decisions.

21   Moreover, ERISA does not require retirement plan fiduciaries such as the

22   Committee to review the 15(c) Documents; the two statutory regimes are distinct,

23   involving different fiduciary duties imposed on different individuals.  ERISA

24   explicitly was limited to not encompass aspects of mutual fund management like the

25   process behind the 15(c) Documents, because Congress decided that mutual funds

26   were already regulated under that separate regime and they did not need to come

27   _____

[4] Joe Morris, *PIMCO's Industry-Leading Flows Hinge on Income*, Ignites, Aug. 22, 2017.

28

within ERISA's ambit.[5]   The documents are accordingly irrelevant to Plaintiffs' ERISA challenges to the Committee's processes.

Plaintiffs contend that they need the 15(c) Documents for their information on fund performance and fees, as well as profitability, but neither is persuasive.  Fund performance and fee information is publicly-available and any such information provided to the Committee has already been produced to Plaintiffs.   The only information Plaintiffs seek that has not already been provided to them is the profitability information of two mutual fund manager entities, PIMCO[6] and AllianzGI.  However, Plaintiffs' claim seeking disgorgement of those two entities' profits has ***already been dismissed***, and separate litigation under the Investment Company Act is proceeding in parallel with this action.  Accordingly, Plaintiffs have no right to these materials.

***Second,*** Plaintiffs seek to compel the production of a limited set of documents—only 19—that Defendants determined to be protected by the attorney-client privilege and not subject to the fiduciary exception to that privilege because they involve instances of Plan Committee members or AAM seeking or receiving legal advice in their personal capacities, not as Plan fiduciaries, regarding any potential legal liability they may have (the "Privileged Documents").  Plaintiffs do not dispute that the documents are privileged and quibble only with whether they fall under the fiduciary exception.  But, as the Ninth Circuit instructs, the fiduciary exception does not apply where "an ERISA trustee seeks legal advice for his own protection" and "hard cases should be resolved in favor of the privilege, not in favor of disclosure" in order to encourage ERISA fiduciaries to seek legal advice

---

[5] H.R. Conf. Rep. 93-1280, *reprinted in* 1974 U.S.C.C.A.N. 5038, 5077 (Aug. 12, 1974) ("Conference Report").

[6] "PIMCO" includes Pacific Investment Management Company LLC and related entities.  "AllianzGI" includes Allianz Global Investors U.S. Holdings LLC, Allianz Global Investors U.S. LLC, Allianz Global Investors Distributors LLC, and their respective predecessors.  "AAM" includes Allianz Asset Management of America LLC and Allianz Asset Management of America LP.

1   regarding their duties.  *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999).

2   Plaintiffs' request upends that balance and so it should be denied.

## III.   Plaintiffs' Position

4           Under Federal Rule of Civil Procedure 26(b)(1), parties are entitled to

5   "discovery regarding any nonprivileged matter that is relevant to any party's claim

6   or defense and proportional to the needs of the case." Because the scope of

7   discovery under Rule 26(b) is "extremely broad," "discovery should be allowed

8   unless the information has no conceivable bearing on the case." *Compact*

9   *Collections Ltd. v. Indep. Film & Television All.*, 2013 WL 12142845, at *1 (C.D.

10  Cal. Feb. 25, 2013) (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal

11  1995)). "The party who resists discovery has the burden to show discovery should

12  not be allowed, and has the burden of clarifying, explaining, and supporting its

13  objections." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655–56

14  (C.D. Cal. 2005). "To meet this burden, the objecting party must specifically detail

15  the reasons why each request is improper." "[U]nsubstantiated objections that the

16  requests are overbroad and burdensome are insufficient." *Id.*; *see also Walker v.*

17  *Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)

18  ("Boilerplate, generalized objections are inadequate and tantamount to not making

19  any objection at all.").

### A.   The Court Should Order that the 15(c) Reports Be Produced, Consistent with Other Cases

22  Plaintiffs' Second Set of Requests for Production of Documents sought:

23  For each year of the Subject Period, all reports (including but not
    limited to the Profitability, Expense, and Performance Reports)
24  prepared as part of the 15(c) process for each investment adviser
    subsidiary or affiliate of AAM (e.g., PIMCO, AGI, AGIFM, NFJ,
25  RCM, and NACM), so long as the entity managed one or more
    Designated Investment Alternatives within the Plan during the year in
26  question.

*Richter Decl. Ex. 1 at 7* (Request No. 51). These reports are relevant and proportional to the needs of this case, and should be produced.  Defendants' various objections are without merit. *See Richter Decl. Ex. 2* (response to Request No. 51).

### 1.   The 15(c) Materials Are Relevant Because They Contain Defendants' Own Assessment of the Profitability and Relative Expense and Performance of Funds in the Plan

15(c) reports are created on an annual basis pursuant to Section 15(c) of the Investment Company Act, and contain information relating to the performance, expense, and profitability of every mutual fund offered by a mutual fund company. *See* H. Norman Knickle, *The Mutual Fund's Section 15(c) Process: Jones v. Harris, The SEC and Fiduciary Duties of Directors*, 31 REV. BANKING & FIN. L. 265, 265–67, 274, 295 (2011) (outlining reports that must be prepared as part of annual 15(c) advisory fee-negotiation process);[7] *Gallus v. Ameriprise Financial, Inc.*, 497 F. Supp. 2d 974, 976 (D. Minn. 2007) (listing materials prepared as part of 15(c) process).  Because AAM is a mutual fund company, this information contains Defendants' own "peer" group assessments of the merits and costs of investments in the Plan (which is relevant to Plaintiffs' claim for breach of the duty of prudence), and also sheds light on Defendants' financial incentives for including such investments in the Plan lineup (which is relevant to Plaintiffs' claim for breach of the duty of loyalty).  Further, the profitability reports are relevant to the relief requested by Plaintiffs, which includes not only recovery of losses to the Plan but also disgorgement of profits.  *See* 29 U.S.C. § 1109(a) (requiring fiduciaries who breach their fiduciary duties to "restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary").

Notably, in *Brotherston v. Putnam Investments, LLC*, No. 1:15-cv-13825 (D. Mass.), an ERISA case referenced in Defendants' objections and recently tried by Plaintiffs' counsel, the 15(c) reports for every year in the class period were admitted

---

[7] *Available at* https://www.bu.edu/rbfl/files/2013/09/MutualFundSectionProcess.pdf.

into evidence at trial. *See Richter Decl. Ex. 10* (admitted trial exhibit list from *Brotherston*, listing 14 exhibits that include 15(c) reports, labeled as "Black Book" reports). Further, such reports have been found relevant, and were ordered to be produced, in two other ERISA cases alleging that the plan sponsor breached its fiduciary duties by retaining its own funds in its company 401(k) plan. *See supra* at 2 (citing *Wildman*, ECF No. 106 at 5-6; *Krueger*, 2013 WL 12139425, at *2). One of these cases – *Wildman* – involved the same counsel on both sides of the case. Accordingly, it would be highly unfair and unusual to force Plaintiffs to prosecute and try their case here without the benefit of such discovery.[8]

### 2.   Defendants' Objections to Producing the 15(c) Reports Are Meritless

Defendants' principal objection to producing the 15(c) reports is that Plaintiffs' request for such reports is "unduly burdensome and not proportional to the needs of this case." This objection is meritless. Defendants are legally required to preserve 15(c) documents "in an easily accessible place." 29 C.F.R. § 270.31a-2(a)(6). By law, therefore, Defendants must be able to easily retrieve these reports. In *Wildman*, the court was "not persuaded this represents an undue burden," noting that defendants had not shown that "the task of producing or answering is unusual, undue or extraordinary." *Wildman,* ECF No. 106 at 5-6 (W.D. Mo. July 27, 2017) (quoting *Cont'l Ill. Nat. Bank & Tr. Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991)). The same reasoning applies here.

Whatever burden Defendants may incur by retrieving these readily-

---

[8] Defendants do not have any proper basis for refusing to produce the 15(c) reports on the grounds that they were not separately reviewed by the 401(k) Committee. Because these reports are prepared and reviewed as part of AAM and its subsidiaries' normal course of business, the Committee and its members had constructive knowledge of the documents, at a minimum. Further, any damaging information in the reports constitutes an admission against interest, regardless of who reviewed them.

identifiable reports out of their file cabinet (or analogous electronic repository), it is certainly not disproportionate to the needs of this case.  In deciding whether a party's discovery requests are proportionate to the needs of the case, a court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Kellgren v. Petco Animal Supplies, Inc.*, 2016 WL 4097521, at *2 (S.D. Cal. May 26, 2016) (quoting Fed. R. Civ. P. 26(b)(1)).  Each of these factors favors production of the reports here.

**First**, the issues at stake in this case are significant, as this is a class action lawsuit that affects the retirement savings of thousands of current and former employees of AAM and its affiliates. **Second**, the amount in controversy is substantial – total Plan assets ranged from $420 million in 2009 to $861 million in 2015,[9] and Plaintiffs' damages expert has issued a preliminary expert report estimating that Defendants' fiduciary breaches resulted in nearly $60 million in losses to the Plan. *See* Supplement to Preliminary Expert Report of Steve Pomerantz, PhD, ECF No. 98-2, at 3. **Third**, the 15(c) reports that Plaintiffs seek are not publicly-accessible and can only be obtained from Defendants.[10] **Fourth**, AAM has significant resources, and is a subsidiary of the world's largest insurance company, Allianz SE.[11] **Finally**, for the reasons discussed above, the 15(c) reports are relevant to the issues in the case, and the need for these materials outweighs the burden to Defendants of producing such materials. Defendants have already

---

[9] *See* Preliminary Expert Report of Steve Pomerantz, PhD, ECF No. 103-2, at 6.

[10] While the performance and expenses of the Plan's funds can be gleaned from other materials, the 15(c) reports contain the data and peer comparisons that AAM and its affiliates rely upon.

[11] *See* https://en.wikipedia.org/wiki/Allianz.

1  produced tens of thousands of pages of electronic discovery, including voluminous

2  spreadsheets, and the additional production of the requested 15(c) reports is

3  marginal in both volume and expense, particularly in light of the nature and

4  importance of the information contained in those reports.   Accordingly,   "[t]he

5  factors outlined in Rule 26 lean in favor of finding the 15(c) reports within the scope

6  of discovery[.]"[12]  *Wildman*, ECF No. 106  at 5-6.

7
8
9
**B.**    **The Court Should Order the Production of 19 Documents on
Defendants' Privilege Log, or Review them *in Camera* to Determine
Whether the Fiduciary Exception to the Attorney-Client Privilege
Applies**

10  In addition to the 15(c) reports, Plaintiffs also request that the Court compel

11  Defendants to produce 19 documents on Defendants' privilege log, or in the

12  alternative, order Defendants to submit such documents for *in camera* review so the

13  Court can better assess whether the withheld documents (or the portions of such

14  documents that Defendants seek to redact) are subject to the fiduciary exception to

15  the attorney-client privilege.

16  After extensive meet and confers with Defendants, *see Richter Decl., ¶¶  5-6

17  & 9-12,*  Defendants have agreed to substantially narrow their privilege log to

18  documents falling within three categories:

19
20
• Category 1: documents concerning the potential legal liability of
Retirement Committee members, AAM, or its affiliates;

21
22
• Category 2: documents concerning a governance review conducted by
the Groom Law Group; and

23  • Category 3: legal advice concerning privacy clauses included in certain

24
25
26
27
28
---
[12] Defendants' other stated objections to producing the reports are makeweights.
The requested materials are not vague, as they seek specific types of reports required
to be maintained pursuant to a specific statutory provision (Section 15(c) of the
Investment Company Act).   Moreover, Defendants have not logged any 15(c)
reports on their privilege log and would have no basis for doing so, as such reports
include financial information, not legal advice.

1   contracts.

2   *Richter Decl., Ex. 9 at 2*. Plaintiffs do not seek to compel the production of

3   documents falling within Categories 2 and 3.   However, Plaintiffs believe the

4   documents in Category 1 are subject to the fiduciary exception because they were

5   prepared before this suit was filed and relate to the administration of the Plan rather

6   than the prosecution or defense of any litigation matter.

7        Under the fiduciary exception to the attorney-client privilege, "an employer

8   acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-

9   client privilege against plan beneficiaries on matters of plan administration."

10  *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 933 (9th Cir. 2012) (quoting

11  *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999)).   This exception to

12  privilege is rooted in two distinct rationales: (1) an ERISA trustee has a duty to

13  disclose to plan beneficiaries all information regarding administration—a rationale

14  which can be understood as an instance of the attorney-client privilege giving way

15  in the face of a competing legal principle; and (2) an ERISA trustee, as a

16  representative for the beneficiaries of the trust, is not the client—a rationale which

17  effectively means that the "fiduciary exception" is not an "exception," and that the

18  trustee never enjoyed the privilege as to advice regarding plan administration in the

19  first place. *Northrop Grumman*, 2010 WL 11468584, at *7 (citing *Mett*, 178 F.3d at

20  1063).

21       The proper application of the fiduciary exception "requires that each

22  communication be examined individually," focusing on the purpose of the

23  communication. *Klein v. Nw. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1133 (S.D.

24  Cal. 2011).   This requires looking into "[b]oth the context and content" of the

25  communications at issue. *Mett*, 178 F.3d at 1064. Here, both context and content of

26  the communications at issue point toward applying the exception.

27

28

1

### 1. The Communications Occurred Prior to the Instant Lawsuit, Before Any Known Adversity of Interest Between the Plan's Fiduciaries and Participants

2

3      The "context" of a communication is determined by when it occurred and

4  whether the interests of the fiduciary and the plan beneficiaries were symbiotic or

5  adverse at that time. *See Northrop Grumman*, 2010 WL 11468584, at *8. "[W]hen

6  the interests of the ERISA plan fiduciary and the plan beneficiaries have diverged

7  sufficiently such that the fiduciary . . . [is acting] in its own interest to defend itself

8  against the plan beneficiaries, then the attorney-client privilege remains intact."

9  *Allen v. Honeywell Ret. Earnings Plan*, 698 F. Supp. 2d 1197, 1201 (D. Ariz. 2010)

10 (quoting *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 497 (M.D.N.C.

11 2008)).   For example, in *Mett*, the context of the communications merited privilege

12 because they occurred when "[t]rouble was in the air"; namely, after employees had

13 "begun asking difficult questions" about the pension benefit plan and the fiduciaries

14 were under federal investigation for other conduct. 178 F.3d at 1064.   However,

15 courts have "repeatedly rejected the argument that the *prospect* of post-decisional

16 litigation is enough to overcome the fiduciary exception." *Stephan*, 697 F.3d at 933

17 (emphasis added) (quoting *Allen*, 698 F. Supp. 2d at 1201)); *see also Klein*, 806 F.

18 Supp. 2d at 1134 ("The mere possibility of litigation is insufficient to find that the

19 interests of the fiduciary and the beneficiary have diverged such that the exception

20 no longer applies."); *Wit v. United Behavioral Health*, 2016 WL 258604, at *7

21 (N.D. Cal. Jan. 21, 2016) ("As virtually any policy or guideline may, at some point,

22 be the subject of litigation, merely invoking that possibility is not sufficient to avoid

23 the exception.").[13]

24

---

25 [13] Courts have good reason for rejecting this conjectural rabbit hole. If a fiduciary
26 could evade the exception simply by claiming that she "reasonably anticipated
   litigation" at the time of the communication, courts "would be forced to determine
27 whether the fear of litigation was legitimate. This time-consuming inquiry is not one
28 courts are well-equipped to make." *Allen*, 698 F. Supp. 2d at 1201–02.

Of the 19 documents in the relevant category that Defendants have partially or fully withheld, 18 were authored in 2011 or 2012. *See Richter Decl., Ex. 11.* The remaining document is from April 2014. *Id.* This action was not filed until October 7, 2015, and to Plaintiffs' knowledge, no action had been filed against the Plan's fiduciaries prior to that date. Accordingly, the Plan's fiduciaries could not have been acting in their "own interests to defend [themselves] against the plan beneficiaries," because the beneficiaries had not yet taken any action to defend against. *Allen*, 698 F. Supp. 2d at 1201 (quoting *Tatum*, 247 F.R.D. at 497). Instead, when they requested the legal advice at issue, they occupied their standard role as fiduciaries acting "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

### 2.     There Is No Evidence or Reason to Believe the Content of the Communications Falls Outside the Fiduciary Exception

As for the content of the communications, Defendants assert that they "contain[] advice regarding the potential liability of Committee members, AAM, or its affiliates[.]" *Richter Decl., Ex. 9 at 2.* However, this generic assertion is not sufficient to support their privilege claim. "As virtually any policy or guideline may, at some point, be the subject of litigation, merely invoking that possibility is not sufficient to avoid the [fiduciary] exception." *Wit*, 2016 WL 258604, at *7.

To support their assertion that the communications at issue are privileged and fall outside the fiduciary exception, Defendants must show that any assessment of potential liability was backward looking, and did not relate to the administration of the Plan going forward. *See Northrop Grumman*, 2010 WL 11468584, at *8 (fiduciary exception applies to communications relating to "prospective" operation of Plan, but does not apply to "advice regarding a trustee's personal civil and criminal exposure regarding *events that had already occurred*.") (emphasis added). There is no evidence or reason to believe that these communications were focused

-13-

on past events.  As noted above, the Plan's fiduciaries were not faced with a lawsuit or a specific threat of litigation relating to their prior handling of the Plan at the time of the relevant communications.  To the contrary, the 401(k) Committee was struggling to develop an investment policy statement ("IPS") that would articulate how the investments in the Plan would be selected and monitored going forward. *See, e.g., Richter Decl., Ex. 12* (May 1, 2012 committee meeting minutes stating that an "Investment Policy statement philosophy …will shape the approach to fund offerings" in the Plan); *id., Ex. 13* (401(k) committee meeting agenda referencing discussion regarding IPS, suggestions from committee, and next steps).  This process was a long one, and an IPS was not ultimately adopted until October 2014. *See Order Granting Class Certification, ECF No. 108, at 4.*  Accordingly, all evidence is that the relevant communications regarding "potential liability" were considered for purposes of plan administration (i.e., whether the Plan's fiduciaries should adopt a new investment philosophy and change Plan's investment lineup), not the defense or prospective defense of a legal action.

Because the Plan's fiduciaries sought legal advice while acting on behalf of plan participants, not in response to litigation, the Court should hold that the communications at issue fall within the fiduciary exception and should be produced. In the alternative, the Court should review each of these 19 documents *in camera* to determine whether the fiduciary exception applies. *See Northrop Grumman Corp.*, 2010 WL 11468584, at *11 ("The Court designates the following categories of documents/communications for *in camera* review: … f) Documents/ Communications Regarding Company/Trustee/Fiduciary Liability").

**********

## IV.    Defendants' Position

Plaintiffs' Motion should be denied as untimely or, in the alternative, because

1    each of their two requests fails.

2    **A.      Plaintiffs' Motion Should Be Denied as Untimely.**

3    Fact discovery closed in this matter on August 15, 2017.  Dkt. No. 56.  In

4    contravention of that deadline, Plaintiffs did not serve their portion of the Joint

5    Stipulation on Defendants until two days later, August 17, 2017, and they do not

6    plan to file their Motion with the Court until August 25, 2017, the same date that

7    summary judgment motions are due.  Rosenberg Decl. in Opp. to Pls.' Mot. to

8    Compel ("Rosenberg Decl.") ¶ 2.  Because this Motion is untimely, it should be

9    denied on that basis alone.

10   ***First***, it is undisputed that this Motion seeks to compel documents Plaintiffs

11   sought in fact discovery (Richter Decl. Ex. 1 at 6-7).  It does not seek any materials

12   reviewed or considered by Defendants' expert witnesses.  Because the Motion will

13   be filed after the close of fact discovery, it is therefore untimely.  *See Watts v.*

14   *Allstate Indem. Co.*, No. 08-cv-01877, 2012 WL 5289314, at *2-3 (E.D. Cal. Oct.

15   23, 2012) (expert discovery deadline did not provide deadline for filing of fact

16   discovery motion, which was untimely).

17   ***Second***, that the motion deadline is set later than August 15, 2017 provides

18   Plaintiffs no relief whatsoever where the documents sought are related to an already

19   expired fact discovery deadline.  *See, e.g.*, *United States v. Celgene Corp.*, No. 10-

20   3165, 2015 WL 9661172, at *1 (C.D. Cal. Oct. 16, 2015) (motion to compel fact

21   discovery untimely where filed after the fact discovery deadline).[14]  "At some point

22   fact discovery must end," and so, to enable that to happen, the Court should enforce

23   the previously-set deadline for fact discovery.  *Greer v. Elec. Arts, Inc.*, No. C10-

24   3601, 2012 WL 6115599, at *3 (N.D. Cal. Dec. 10, 2012) (denying untimely fact

---

[14] Plaintiffs do not even try to claim that they were diligent in bringing this untimely Motion, nor could they.  Their own exhibits demonstrate that the parties reached an impasse at least with respect to the 15(c) Documents no later than July 28, 2017.  Richter Decl. Ex. 6.  In fact, Class counsel first raised issues with 15(c) materials and Defendants' privilege log with Defendants' counsel on June 29, 2017.  Richter Decl. Exs. 3-4.

1  discovery motion).

2      The Court therefore should deny Plaintiffs' Motion on the ground of

3  untimeliness.

4      **B.    Plaintiffs' Request for 15(c) Documents Should Be Denied as a Substantive Matter.**

5

6      Plaintiffs' request for 15(c) Documents should be denied on the merits as

7  well.  Those documents are irrelevant to this action, are additionally voluminous and

8  contain commercially sensitive information, and production of such documents

9  would be disproportionate to the needs of this case given the undue, unnecessary,

10  and costly burden that production of them would impose on Defendants.

11      **1.    Background**

12          **(i)    The 15(c) Process**

13      Section 15(a) of the ICA provides that an advisory agreement may continue in

14  effect for more than two years only if it is "specifically approved at least annually

15  by the board of directors" of a mutual fund.  15 U.S.C. § 80a-15(a).  Section 15(c) of

16  the ICA requires that the initial agreement and any renewals be approved by a

17  majority of directors who are *not* parties to the agreement or "interested persons" of

18  any such party (the "Independent Trustees").[15]  *See* 15 U.S.C. § 80a-15(c).  In

19  connection with the annual evaluation and approval the terms of each fund's

20  investment advisory contract, the advisor—here PIMCO and AllianzGI,

21  respectively—annually, and throughout the year, provides the relevant fund board of

22  trustees with thousands of pages of information and reports regarding the operations

23  of the fund and the advisor's performance under the contract.  *See Sivolella v. AXA*

24  *Equitable Life Ins. Co.*, No. 11-4194, 2016 WL 4487857, at *27 (D.N.J. Aug. 25,

25  2016).  These reports include lengthy documents that describe in detail all of the

26  services the advisor, its affiliates, and third-parties provide to the funds.  *See Kasilag*

27  ─────────────
[15] The PIMCO Funds and AllianzGI Funds each have a Board of Trustees in lieu of
28  a Board of Directors, as they are organized as Massachusetts business trusts.

1    *v. Hartford Inv. Fin. Servs.*, LLC, No. 11-1083, 2016 WL 1394347, at *6, 15

2  (D.N.J. Apr. 7, 2016).  They also include profitability reports that describe in detail

3  the advisors' cost allocation methodologies and the resulting inter-company

4  allocations from the advisors' parent(s) and affiliate(s), as well as provide

5  information on amounts paid to third-party service providers to the funds.  *Id.* at

6  *11.  The Securities and Exchange Commission has outlined some of the factors that

7  the trustees are to consider under  the ICA:

8       This would include, but not be limited to, a discussion of the nature,
extent, and quality of the services to be provided by the investment

9       adviser; the investment performance of the Fund and the investment
adviser; the costs of the services to be provided and profits to be

10       realized by the investment adviser and its affiliates from the
relationship with the Fund; the extent to which economies of scale

11       would be realized as the Fund grows; and whether fee levels reflect
these economies of scale for the benefit of Fund investors.  Also . . .

12       comparisons of the services to be rendered and the amounts to be paid
under the contract with those under other investment advisory

13       contracts, such as contracts of the same and other investment advisers
with other registered investment companies or other types of clients

14       (*e.g.*, pension funds and other institutional investors).  . . . [A]nd
[potentially] any benefits derived or to be derived by the investment

15       adviser from the relationship with the Fund such as soft dollar
arrangements by which brokers provide research to the Fund or its

16       investment adviser in return for allocating Fund brokerage.

17  Disclosure Regarding Approval of Investment Advisory Contracts by Directors of

18  Investment Companies, 69 F.R. 39798, 39807 (June 30, 2004).

19       Just as ERISA places a fiduciary duty on entities such as the Committee, and

20  authorizes plan participants to bring suit against the Committee for any alleged

21  breaches, the ICA places a fiduciary duty on advisors with respect to their receipt of

22  compensation from the funds and authorizes mutual fund investors to bring suit

23  against the advisor regarding alleged violations of such duty.  *See* 15 U.S.C. § 80a-

24  35(b).  Because mutual funds are separately regulated under the ICA, their

25  management was expressly carved out of ERISA's fiduciary rules.  *See* Conference

26  Report, 1974 U.S.C.C.A.N. at 5077 ("Since mutual funds are regulated by the

27  Investment Company Act of 1940 . . . it is not considered necessary to apply

28

1    [ERISA's] fiduciary rules to mutual funds . . . .").  Plaintiffs have elsewhere

2    conceded that the regime governing securities matters is irrelevant here, arguing that

3    "[t]his is not a securities case . . . .  Rather, this is an ERISA action . . . ."  Reply

4    Mem. in Support of Pls. Mot. for Class Cert., Dkt. No. 98, at 1.

5           Not only are the statutory regimes distinct, but Plaintiffs' request for ICA

6    material in this ERISA case is particularly suspect where PIMCO is already the

7    defendant in an ICA suit.  That case challenges as excessive the fees that PIMCO

8    and a distributor subsidiary received in connection with services they performed

9    with respect to the PIMCO Total Return Fund, one of the investments in the Plan's

10   core lineup.  *See* Compl. ¶ 1, *Kenny v. Pacific Inv. Mgmt. Co.*,  No. 14-1987 (W.D.

11   Wash. Dec. 31, 2014); FAC ¶ 72.  PIMCO has complied with its discovery

12   obligations in that suit, but PIMCO and AllianzGI should not have to produce

13   similar documents here—for all of their funds on the Plan's core lineup, not just the

14   Total Return Fund—where such documents are irrelevant to Plaintiffs' ERISA

15   claims.  Even suggesting that such materials are appropriate here suggests strongly

16   that this is simply a fishing expedition for unpled claims.

17                      **(ii)    Defendants' Objections**

18          On June 26, 2017, Defendants objected in full to Plaintiffs' Request No. 51

19   (the "Request"), which sought the 15(c) Documents, specifically explaining that the

20   Request was "overbroad, unduly burdensome and not proportional to the needs of

21   this case because it seeks voluminous documents or information referenced by

22   Section 15(c) of the [ICA], 15 U.S.C. § 80a-15(c)[,] which are expressly not subject

23   to ERISA's purview, and which have no relevance to this case."  Richter Decl. Ex. 2

24   at 9.  Defendants also explained, "Plaintiffs' own expert witness stated in another of

25   Plaintiffs' counsels' cases that the 15(c) process was 'irrelevant' to the 401(k)

26   context.  Trial Tr. at 73:3, *Brotherston v. Putnam Inv., LLC*, No. 1:15-cv-13825 (D.

27   Mass. Apr. 19, 2017)."  *Id.*  Moreover, Defendants objected to the Request as

28

"overbroad, unduly burdensome and not proportional to the needs of this case to the extent that it seeks . . . profitability, expense, or performance information regarding investment options not offered as [investment options to Plan participants]."  *Id.* Notwithstanding these objections, Defendants stated that they would have already produced any 15(c) Documents that were shared with the Committee during the putative class period, but, because there were none—and because there is no evidence at all that the Committee received, relied on, or even looked at these materials in making the decisions for the Plan that are actually challenged in this ERISA action—Defendants had not and would not produce any 15(c) Documents. *Id.*

### 2. The 15(c) Documents Are Irrelevant to the Claims in this Case.

Discovery may not be had on matters irrelevant to the case.  *See, e.g.*, *Masimo Corp. v. Shenzhen Mindray Bio-Medical Elecs. Co.*, No. 12-02206, 2015 WL 12912331, at *2 (C.D. Cal. Apr. 17, 2015) (denying motion to compel production of irrelevant documents).  Because the 15(c) Documents are prepared as part of a separate process required to be undertaken by the boards of trustees of the PIMCO Funds and AllianzGI Funds, under a separate regulatory regime, and were never received or reviewed by the Committee, they are irrelevant to Plaintiffs' claims.

Plaintiffs assert violations of both ERISA's duties of prudence and loyalty. FAC ¶ 117.  Prudence claims focus on the fiduciaries' "conduct" and therefore whether they "used appropriate methods to investigate the merits of the transaction." *Harris v. Amgen*, 788 F.3d 916, 936 (9th Cir. 2014) (internal quotation marks omitted), *rev'd on other grounds*, 136 S. Ct. 758 (2016).[16]  Loyalty claims turn on

---

[16] Prudence claims also have a substantive or objective component, *i.e.* a plan investment option is prudent if it would have been chosen by a hypothetical prudent fiduciary.  *See In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 154 (3d Cir. 1999). Plaintiffs do not contend that the 15(c) Documents are relevant to objective prudence, which by its nature turns on whether a different fiduciary would have invested in the funds following its own due diligence process (*see id.*), not on whether documents maintained by AAM's subsidiaries contain information different than that considered by the Committee.

1   the fiduciaries' "subjective motivation[s]." *A.F. v. Providence Health Plan*, 173 F.

2   Supp. 3d 1061, 1073 (D. Or. 2016).  Here, the Committee never received or

3   reviewed the 15(c) Documents, as Plaintiffs implicitly concede.  *See supra* Section

4   III.A.1.[17]  The 15(c) Documents are therefore irrelevant to the Committee's

5   processes and could not have impacted the Committee's motivations.  Even

6   Plaintiffs' expert, Dr. Pomerantz, agrees.  *See supra* Section IV.B.1.i.

7        Plaintiffs' arguments to the contrary are unpersuasive.  Plaintiffs first argue

8   that "[b]ecause AAM is a mutual fund company, this information contains

9   Defendants' own 'peer' group assessments" of the Plan's investment options.  *See*

10  *supra* Section III.A.1.  Plaintiffs' assertion is based on a faulty premise; AAM is not

11  a mutual fund company, but rather a holding company to asset managers, PIMCO

12  and AllianzGI, that conduct their own 15(c) processes.  Rosenberg Decl. Ex. B at

13  22:13-16 (Puntoriero Tr.).

14        Plaintiffs additionally contend that "the profitability reports are relevant to . . .

15  disgorgement of profits."  *See supra* Section III.A.1.  This is even more baseless.

16  Judge Staton has already dismissed claims of disgorgement against PIMCO and

17  AllianzGI.  Dkt. No. 61 at 14-16. And the only remaining corporate defendant,

18  AAM, is a holding company; it does not receive or have an entitlement to the

19  revenues or profits that AllianzGI and PIMCO earn in connection with the services

20  they provide to mutual funds.  Rosenberg Decl. Ex. B at 30:7-31:18 (Puntoriero Tr.).

21  Therefore, the profitability of AllianzGI and PIMCO is irrelevant to Plaintiffs' only

22  remaining request for disgorgement of AAM's profits.[18]

---

23  [17] Defendants have, in response to Plaintiffs' other requests for production, provided
24  all fee and performance information for the Plan's funds that was provided to the
Committee during the class period.

25  [18] Plaintiffs also claim that the 15(c) Documents are relevant because they
"constitute[] an admission against interest."  *See supra* Section III.A.1.  This
26  unsupported claim is dubious, particularly where the 15(c) Documents show fee and
performance information for the funds that is publicly-available and demonstrates
27  the funds' high quality.  Also, since these are statements made by PIMCO and
AllianzGI to the funds' boards of trustees—none of whom are parties to this case—
28  Plaintiffs do not, and cannot, show how these statements are an admission by a party

1    Nor do Plaintiffs' cases require a different result.  In *Wildman v. American*

2    *Century Services LLC*, unlike here, the plaintiffs' disgorgement of profits claim was

3    not dismissed against the asset manager entities.  *See* 237 F. Supp. 3d 902, 917-18

4    (W.D. Mo. 2017).  Accordingly, the asset managers remained parties and the

5    plaintiffs had additional arguments not valid here that the 15(c) Documents were

6    relevant to those entities' knowledge and to the claim against them.  *See* Rosenberg

7    Decl. Ex. D at 5 (Plaintiffs' motion to compel in *Wildman*, making these additional

8    arguments).  *Krueger v. Ameriprise Financial Inc.*, No. 11-2781, 2013 WL

9    12139425 (D. Minn. Aug. 15, 2013), lacks any analysis into the relevancy of the

10   documents or the burden that defendants would have to undergo to produce them.

11   *Id.* at *2.  In that case, there was no indication whether the relevant committee

12   reviewed 15(c) material, or that defendants otherwise agreed to provide all material

13   reviewed by the Committee, nor was there a suggestion of parallel litigation under

14   the ICA.  And in neither case, unlike here, was the challenge to the funds of multiple

15   advisors, where the ICA process would involve separate groups of trustees,

16   reviewing separate materials, over separate funds, advised by separate advisors.[19]

17   *Brotherston* is similarly unavailing.  In that case, the defendants voluntarily

18   produced the documents in discovery, perhaps to support their defense that it was

19   appropriate for them to utilize nearly every fund affiliated with the sponsor.  2017

20   WL 2634361, at *8 (D. Mass. June 19, 2017).  Here, by contrast, the Committee

---

against its interests.  Nor are evidentiary hearsay exceptions the proper usage for
relevance and burden.  Plaintiffs further claim, again without support, that the "the
Committee and its members had constructive knowledge of the documents."  *See*
*supra* Section III.A.1.  Plaintiffs have offered no evidence that Committee members
had access to the 15(c) Documents, and their expert has opined in another case that
retirement plan committee members should not rely on analyses created in the 15(c)
process.  Rosenberg Decl. Ex C at 108 (*Brotherston* trial transcript).

[19] Not only are Plaintiffs' cases distinguishable, but they are also wrongly decided.
The drafters of ERISA expressly omitted the management of mutual funds from
ERISA's requirements.  Conference Report, 1974 U.S.C.C.A.N. at 5077.  It would
be utterly implausible to suggest that the fiduciaries of ERISA plans attempt to
duplicate, or even audit, the intensive negotiations required of trustees under the
ICA.

employed a substantially stronger process for selecting and monitoring investment options for the Plan, and offered only a limited sub-set of AllianzGI and PIMCO funds.  The voluntary disclosure of materials in *Brotherston* therefore provides no support for Plaintiffs' request.

And in none of those cases was there the circumstance, like here, where parallel proceedings under the ICA were transpiring as to one of the very advisors and the very materials, for at least one fund, sought to be compelled in this ERISA action.

### 3. The Request for 15(c) Documents is Overbroad and Producing the Documents Would Be Unduly Burdensome and Not Proportional to the Needs of the Case.

Plaintiffs next argue that the Request is not unduly burdensome or overbroad, and that it seeks discovery proportional to the needs of the case.  Each point is wrong.

*First*, the Request is unduly burdensome.  *See Kilbourne v. Coca-Cola Co.*, No. 14-984, 2015 WL 10943827, at *6 (S.D. Cal. Apr. 24, 2015) (denying motion to compel where "the Court finds the limited relevance of this extensive discovery is outweighed by the burden in terms of time and expense to produce the information Plaintiff seeks").[20]  Plaintiffs argue that the 15(c) Documents can be "easily retrieve[ed]" because Defendants are required to maintain them.  *See supra* Section III.A.2.  Plaintiffs are wrong; the requirement they cite runs only to the mutual funds themselves.  *See* 17 C.F.R. § 270.31a-2(a)(6).

Moreover, because of the ongoing nature of the 15(c) process, the side-by-side review of funds at issue and the over 100 funds that are not, advised by different advisors under different processes, and the many documents and iterations of documents considered by the different groups of Independent Trustees, locating,

---

[20] Plaintiffs' assertion that discovery must be granted unless the burden on the Defendants is "unusual, undue, or extraordinary" relies on out-of-circuit case law that is inconsistent with this balancing approach favored by Ninth Circuit courts. *See supra* Section III.A.2.

collecting, and producing the voluminous 15(c) reports is a burdensome, expensive, and time-consuming process.  *See, e.g.*, *Kasilag*, 2016 WL 1394347, at *7 (noting that discovery in an ICA case was "extensive" and took place over "years") (internal quotation marks omitted).  Indeed, in the *Kenny* case involving the PIMCO Total Return Fund, PIMCO has produced, to-date, over 100,000 pages of board of trustees materials.  Rosenberg Decl. ¶ 11.

*Second*, the Request is overbroad.  In their Motion, Plaintiffs implicitly concede that the Request they propounded and then defended throughout the parties' meet and confer process was overbroad; they now seek to limit the Request for the first time here to "performance, expense and profitability reports" of mutual funds offered as Plan investments.  *See supra* Section I.[21]  Plaintiffs' new request is still overbroad.  For example, the request for "expense" reports may include the detailed reports on all of the services performed on behalf of the funds, which are relevant to the Independent Trustees' review of the funds' fees but have no relevance to the issues in this litigation.  *See supra* Section IV.B.1.i.  In addition, the request for "performance" could include part or all of one or more reports provided at every mutual fund board meeting.  Moreover, the request for "profitability" reports covers information only on the profitability of the mutual funds and indirectly AllianzGI and PIMCO, not on AAM or any of the other remaining defendants.  *See supra* Section IV.B.2; *Grover Prod. Co. v. FleetPride, Inc.*, No. 14-8938, 2015 WL 12746221, at *2 (C.D. Cal. Sept. 17, 2015) ("The Court will not compel discovery responsive to a request that is impermissibly overbroad, and if answered would produce much tangential if not irrelevant information.").

*Third,* with the exception of the clearly irrelevant information about non-parties' profitability, the Request seeks discovery that is not proportional to the

---

[21] Plaintiffs' original Request sought all 15(c) documents, without limitation, relating to any PIMCO or AllianzGI-managed mutual fund, even if that fund was not included in the Plan lineup.  *See supra* Section III.A.

1   needs of the case because the information sought is already available to Plaintiffs.

2   *See Mkt. Lofts Cmty. Assoc. v. Nat'l Union Fire Ins. Co.*, No. 15-3093, 2016 WL

3   6237909, at *7 (C.D. Cal. Mar. 9, 2016) (denying motion to compel that sought

4   publicly-available information).  Information on the Plan's funds' fees and

5   performance is publicly-available or has been produced through discovery, and

6   Plaintiffs' expert has used this data to calculate alleged losses to the Plan as a result

7   of allegedly excessive fees and poor performance without any statement that the

8   analysis is incomplete due to lack of access to the 15(c) Documents.  *See*

9   Preliminary Expert Report of Steve Pomerantz, PhD (Feb. 14, 2017) ("Pom. R."),

10   Dkt. No. 78-2, at 35-39; Supplement to Preliminary Expert Report of Steve

11   Pomerantz, PhD, Dkt. No. 98-2 at 10-12.  Indeed, Plaintiffs' themselves obtained

12   the funds' publicly-available fees, expenses, and performance before discovery

13   began.  *See* FAC ¶¶ 70, 72.[22]

14                                        * * *

15          For the foregoing reasons, Plaintiffs' motion to compel production of the

16   15(c) Documents should be denied.

17          **C.     Plaintiffs' Request for the Privileged Documents Should Be Denied.**

18          Plaintiffs' motion to compel the 19 Privileged Documents should also be

19   denied because ERISA plan fiduciaries like the Committee may seek legal advice in

20   their personal capacity regarding any potential liability without fear that such

21   personal legal advice could be disclosed to plan participants.

22                 **1.     The Fiduciary Exception to the Attorney-Client Privilege.**

23          In *Mett*, the Ninth Circuit explained in detail the principles underlying the

24   attorney-client privilege and fiduciary exception, and where those principles support

25   a finding that a document falls outside of the fiduciary exception. As *Mett*

26   _____

27   [22] Mutual funds are required to publicly disclose information on their fees and performance.  *See* 15 U.S.C. § 77e(b)(2); 17 C.F.R. §§ 210.6-07(2) (1995); 270.30e-

28   1 (2014); 274.11A (1994).

1   explained, the fiduciary exception to the attorney-client privilege is a narrow

2   exception that permits ERISA plan participants to obtain privileged advice given to

3   plan fiduciaries, in their fiduciary capacity, to aid in plan administration.  *Mett*, 178

4   F.3d at 1063.  "[B]y agreeing to serve as a fiduciary, an ERISA trustee is not

5   completely debilitated from enjoying a confidential attorney-client relationship."  *Id.*

6   For example, "where a fiduciary seeks legal advice" not to aid in his or her services

7   as a fiduciary but rather in her personal capacity and "for her own protection, the

8   core purposes of the attorney-client privilege are seriously implicated and should

9   trump the beneficiaries' general right to inspect documents relating to plan

10  administration."  *Id.* at 1065.  "[H]ard cases should be ***resolved in favor of the***

11  ***privilege, not in favor of disclosure***," because ERISA plans and participants benefit

12  when ERISA fiduciaries do not "shy[] away from legal advice regarding the

13  performance of their duties" and are not so afraid of privileged communications

14  being disclosed to participants that they develop "an unwillingness to serve" as a

15  fiduciary.  *Id.* at 1065 (emphasis added).

16              **2.      The Privileged Documents Concern Personal Legal Advice**
                         **Regarding Potential Liability and So the Court Should Not**
17                       **Order Their Disclosure.**

18          Plaintiffs' Motion asks the Court to order disclosure of, or review *in camera*,

19  19 privileged documents in which Committee members or AAM seek or receive

20  legal advice in their personal capacity regarding potential liability in any class action

21  lawsuit about selection of Plan investment options.  Richter Decl. Ex. 9 at 2-3.

22  Because these communications involve personal legal advice sought for or provided

23  to AAM and the Committee members "for [their] own protection," rather than with

24  respect to their role as plan fiduciaries or with regards to plan administration,

25  disclosure of them would upset the delicate balance put forth by the Ninth Circuit in

26  *Mett*.  178 F.3d at 1065.  Plaintiffs' request should therefore be denied.

27          Plaintiffs first contend that the Privileged Documents fall under the fiduciary

28

1   exception because they were sent in 2011, 2012, or 2014, arguing that these were

2   years prior to the filing of this lawsuit.  *See supra* Section III.B.1.  While Plaintiffs

3   are correct that this lawsuit was not filed until 2015, that is not the proper measuring

4   stick for determining when the Committee and AAM could seek legal advice

5   regarding liability without fear of that advice being disclosed to Plan participants.

6   Instead, such privileged communications remain protected where litigation is

7   "anticipated," as it would be where there was "recent caselaw involving analogous

8   contexts."  *See Fischel v. The Equitable Life Assurance*, 191 F.R.D. 606, 609-10

9   (N.D. Cal. 2000); *Hudson v. Gen. Dynamics*, 73 F. Supp. 2d 201, 203 (D. Conn.

10  1999) (following *Mett*); *accord Mett*, 178 F.3d at 1064 (fiduciary exception does not

11  apply where "[t]rouble was in the air").

12          As of October 2011, the date of the earliest document Plaintiffs seek, there

13  had already been at least 10 cases filed against retirement plan fiduciaries and/or

14  sponsors challenging mutual fund companies' use of their own mutual funds as

15  investment options for their employees' retirement plans.[23]  There had been many

16  more filed against fiduciaries and plan sponsors that more generally challenged the

17  fees and performance of retirement plan investment options.[24]  In light of this

18  litigation, it was more than appropriate for the Committee and AAM to seek and

19  receive legal advice regarding their own potential liability in a similar suit, and

20  disclosure of such documents under the fiduciary exception would upset the

21

22  [23] *See Krueger v. Ameriprise Fin., Inc.*, No. 11-02781 (D. Minn.) (filed September 2011); *Yost v. First Horizon Nat'l Corp.*, No. 08-2293 (W.D. Tenn.) (filed May

23  2008); *Leber v. Citigroup, Inc.*, No. 07-09329 (S.D.N.Y.) (filed October 2007); *Nolte v. Cigna Corp.*, No. 07-2046 (C.D. Ill.) (filed February 2007); *David v.*

24  *Alphin*, No. 07-00011 (W.D.N.C.) (filed January 2007); *Figas v. Wells Fargo & Co.*, No. 08-04546 (D.D.C.) (filed January 2007); *Shirk v. Fifth Third Bancorp.*, No.

25  05-00049 (S.D. Ohio) (filed January 2005); *Mehling v. N.Y. Life Ins. Co.*, No. 99-05417 (E.D. Pa.) (filed November 1999); *Franklin v. First Union Corp.*, No. 99-344

26  (E.D. Va.) (filed May 1999); *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337 (S.D. Fla.) (filed April 1999).

27  [24] *See, e.g.*, *Kanawi v. Bechtel Corp.*, No. 06-5566 (N.D. Cal.) (filed September 2006); *Spano v. The Boeing Co.*, No. 06-743 (S.D. Ill.) (filed September 2006).

28

principles in *Mett*.  Plaintiffs' cases, which all concern dissimilar fact patterns in which analogous litigation had not already been filed, are inapposite.  *See supra* Section III.B.1.  Indeed, most of Plaintiffs' cases concern individual lawsuits challenging the denial of one participant's benefits, which by their nature are one-off challenges rather than one in a series of similar class action lawsuits like this one.[25]

Plaintiffs next contend that Defendants have not adequately supported their privilege claim.  *See supra* Section III.B.2.  However, each of these entries make clear that legal advice is being provided by or sought from an attorney, and further identifies the date, the attorney or law firm involved in the request, and that the advice was sought or provided with respect to potential legal liability.  Rosenberg Decl. Ex. E (list of log entries for Privileged Documents).  This is sufficient to support their assertion of privilege in light of the litigation ongoing at the time.  *See Hudson*, 73 F. Supp. 2d at 203.

Finally, Plaintiffs contend that legal advice only falls outside the fiduciary exception where it is "backward looking."  *See supra* Section III.B.2.  Plaintiffs' premise is faulty; cases find that the fiduciary exception does not apply even where legal advice about potential liability is rendered while a process is ongoing.  *See Fischel*, 191 F.R.D. at 609-10.  Nevertheless, even if Plaintiffs were correct, the Privileged Documents fall outside of the fiduciary exception because they concern legal advice about potential liability arising from decisions that had already occurred.  For example, although Plaintiffs reference the Committee's drafting of the investment policy statement, which sought to codify the Committee's past practices, Defendants have not sought to keep protected legal advice about the content of the investment policy statement but rather only the personal legal advice

---

[25] *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 922 (9th Cir. 2012); *Klein v. Nw. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1124 (S.D. Cal. 2011); *Allen v. Honeywell Ret. Earnings Plan*, 698 F. Supp. 2d 1197, 1201 (D. Ariz. 2010).

1   about any liability from the Committee's past practices.

2         Defendants' counsel have engaged in numerous discussions with Plaintiffs'

3   counsel to meet and confer over further privilege matters, even after initially

4   disclosing these matters.  First, Defendants agreed to revise their privilege log to

5   provide the additional detail requested by Plaintiffs' counsel and, in connection with

6   that review, produced 172 documents that Defendants agreed could fall within the

7   fiduciary exception.  Rosenberg Decl. ¶ 4.  Second, Defendants then agreed, after

8   further review, to produce an additional 65 documents to Plaintiffs that Defendants

9   also agreed could fall within the fiduciary exception.  *Id.* ¶ 5.  As to the documents

10  that remain in dispute, the Privileged Documents, Defendants have carefully

11  redacted them to only shield the portions of the documents that fall outside of the

12  fiduciary exception, where such advice does not comprise the entire document.  *See*

13  Rosenberg Decl. Ex. F (exemplar document).

14        Plaintiffs ask the Court to review all of the Privileged Documents *in camera.*

15  Such a review is unnecessary where Plaintiffs have failed to show a "reasonable

16  good faith belief" that in camera inspection would reveal that the documents are not

17  privileged.  *See In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2010

18  WL 11468584, at *9 (C.D. Cal. June 29, 2010).

19                                 * * *

20        For the foregoing reasons, Plaintiffs' motion to compel production of the

21  Privileged Documents should be denied.

22                             **********

23

24

25

26

27

28

1     Dated:  August 25, 2017                 Respectfully submitted,

2

3                                              By: /s/ Kai H. Richter

Kai H. Richter, MN Bar No. 0296545*

4                                              krichter@nka.com

Paul J. Lukas, MN Bar No. 22084X*

5                                              Lukas@nka.com

6                                              Carl F. Engstrom, MN Bar No. 0396298*

cengstrom@nka.com

7                                              Jennifer K. Lee, NY Bar No. 4876272*

jlee@nka.com

8                                              NICHOLS KASTER, PLLP

9                                              4600 IDS Center

80 South 8th Street

10                                            Minneapolis, MN 55402

11                                           Phone: (612) 256-3200

Fax: (612) 338-4878

12                                           *admitted pro hac vice

13

14                                           KABATECK BROWN KELLNER LLP

Richard L. Kellner, CA Bar No. 171416

15                                          rlk@kbklawyers.com

16                                          644 South Figueroa Street

Engine Company No. 28 Building

17                                          Los Angeles, CA 90017

18                                          Telephone: (213) 217-5000

Facsimile: (213) 217-5010

19

20                                          ATTORNEYS FOR PLAINTIFFS AND THE CLASSES

21

22

23

24

25

26

27

28

JOINT STIPULATION REGARDING DISCOVERY DISPUTE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/James O. Fleckner
James O. Fleckner (pro hac vice)
jfleckner@goodwinprocter.com
Paul Nemser (pro hac vice)
David Rosenberg (pro hac vice)
drosenberg@goodwinprocter.com
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02110
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231

Christina Queiros Bouchot (SBN 289701)
cbouchot@goodwinprocter.com
GOODWIN PROCTER LLP
601 South Figueroa Street, 41st Floor
Los Angeles, CA 90017
Telephone:  (213) 426-2500
Facsimile:  (213) 623-1673

*ATTORNEYS FOR DEFENDANTS*