KABATECK BROWN KELLNER LLP
Richard L. Kellner, CA Bar No. 171416
rlk@kbklawyers.com
644 South Figueroa Street
Engine Company No. 28 Building
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Kai H. Richter, MN Bar No. 0296545*
krichter@nka.com
Paul J. Lukas, MN Bar No. 22084X*
Lukas@nka.com
Carl F. Engstrom, MN Bar No. 0396298*
cengstrom@nka.com
Jennifer K. Lee, NY Bar No. 4876272*
jlee@nka.com
NICHOLS KASTER, PLLP
80 South 8th Street, Suite 4600
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
*admitted *pro hac vice*

Attorneys for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSANDR URAKHCHIN, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALLIANZ ASSET MANAGEMENT OF AMERICA, L.P., *et al.*,<br><br>    Defendants. | Case No. 8:15-cv-01614-JLS-JCG<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  February 2, 2018<br>Time: 2:30 P.M.<br>Courtroom: 10A<br>Judge: Hon. Josephine L. Staton |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

I.  PROCEDURAL HISTORY ...................................................................... 3

    A. Nature of the Claims ...................................................................... 3

    B. Defendants' Motion to Dismiss .................................................... 3

    C. Discovery ........................................................................................ 4

    D. Plaintiffs' Motion for Class Certification ................................... 4

    E. Defendants' Motion for Summary Judgment ............................... 5

II.  OVERVIEW OF THE SETTLEMENT TERMS ........................................ 5

    A. Proposed Settlement Class ............................................................ 5

    B. Monetary Relief ............................................................................. 5

    C. Prospective Relief .......................................................................... 7

    D. Review by Independent Fiduciary ................................................ 7

    E. Release of Claims .......................................................................... 7

    F. Class Notice and Settlement Administration ............................... 8

    G. Attorneys' Fees and Expenses ..................................................... 9

ARGUMENT ....................................................................................................... 9

I.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ........... 10

    A. The Settlement Was Obtained Through Serious, Informed, Non-Collusive Negotiations ...................................................... 11

    B. The Settlement Provides for Significant Monetary and Prospective Relief, and Falls within the Range of Possible Approval ................... 11

    C. Plaintiffs' Case Faced Risks and Significant Expenses with Further Litigation ....................................................................... 14

    D. The Parties Had Completed Discovery and Had a Thorough Understanding of the Case ............................................ 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

E.  The Class Representatives And Class Counsel Endorse
The Settlement ............................................................................. 16

F.  The Settlement Treats All Class Members Fairly and Equitably ....... 17

II.    THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED ....... 17

III.   THE CERTIFIED CLASSES SHOULD BE AMENDED FOR SETTLEMENT
PURPOSES ...................................................................................... 19

IV.    DAHL ADMINISTRATION SHOULD CONTINUE TO PROVIDE ADMINISTRATIVE
SERVICES IN CONNECTION WITH THE SETTLEMENT ........................................ 19

CONCLUSION ............................................................................................ 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

## Cases

*Bravo v. Gale Triangle, Inc.*, 2017 WL 708766 (C.D. Cal. Feb. 16, 2017)......10, 15

*Brotherston v. Putnam Investments, LLC*, 2017 WL 2634361
     (D. Mass. June 19, 2017)................................................................................14

*Chao v. Aurora Loan Servs., LLC*, 2014 WL 4421308
     (N.D. Cal. Sept. 5, 2014)...........................................................................18

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330
     (S.D. Fla. 2011) ..........................................................................................13

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...................9, 18

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)............................9

*Dynabursky v. Alliedbarton Sec. Servs., LP*, 2016 WL 8921915
     (C.D. Cal. Aug. 15, 2016) .....................................................................16, 17

*In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 11223
     (N.D. Cal. 2015) .........................................................................................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................11

*Kmiec v. Powerwave Techs., Inc.,* No. SACV1200222CJCJPRX,
     2015 WL 12914343, (C.D. Cal. Dec. 4, 2015) .....................................13, 15

*Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984)........................................................14

*Munday v. Navy Federal Credit Union*, 2016 WL 7655807
     (C.D. Cal. Sept. 15, 2016) .........................................................................18

*Nat'l Rural Telecomm's Coop. v. DIRECTV*, 221 F.R.D. 523
     (C.D. Cal. 2004) ...................................................................10, 11, 16, 17

*In re Newbridge Networks Sec. Litig.*, 1998 WL 7657242
     (D.D.C. Oct. 23, 1998) ...............................................................................13

*In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544
     (N.D. Cal. Dec. 22, 2008)...........................................................................11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

    688 F.2d 615 (9th Cir. 1982) ............................................................9, 10, 15

*Peel v. Brooksamerica Mortg. Corp.*, 2014 WL 12589317

    (C.D. Cal. Nov. 13, 2014) ..................................................................10, 11, 13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ....................................18

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................13

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .................................15

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016) .............................18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .............................................10

*Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011) ......................13

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007) .................14

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ..............................................12

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) ..............................................12

*Urakhchin v. Allianz Asset Management of America L.P.*, No. 17-80124

    (9th Cir. June 29, 2017).......................................................................15

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014)...........15

**Rules, Regulations, and Statutes**

68 FR 75632-01 ...................................................................................................7

75 FR 33830-01 ...................................................................................................7

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................18

Fed. R. Civ. P. 23(e)(1)........................................................................................18

**Other Authorities**

5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.) ....................16

A. Conte & H. Newberg, 4 Newberg on Class Actions, § 11:45 (4th ed. 2002) ....16

-iv-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## INTRODUCTION

Plaintiffs Aleksandr Urakhchin and Nathan Marfice ("Plaintiffs") submit this Memorandum in support of their Motion for Preliminary Approval of Class Action Settlement. A copy of the proposed Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as Exhibit A to the accompanying Declaration of Kai Richter ("Richter Decl.").[1] This Settlement resolves Plaintiffs' class action claims against Allianz Asset Management of America L.P. ("AAM-LP"), Allianz Asset Management of America, LLC ("AAM-LLC"), the Committee of the Allianz Asset Management of America L.P. 401(k) Savings and Retirement Plan (the "Committee" or "Investment Committee"), and John Maney (collectively, "Defendants") under the Employee Retirement Income Act ("ERISA"), regarding Defendants' management of the Allianz Asset Management of America L.P. 401(k) Savings and Retirement Plan ("Plan").[2]

Under the terms of the proposed Settlement, AAM-LP will pay $12,000,000 into a common fund for the benefit of Class Members, which will be allocated pro rata among Class Members in proportion to their account balances in the Plan during the Class Period (after deduction of any attorneys' fees, expenses, and class representative awards approved by the Court). This is a fair and reasonable recovery in light of the attendant risks of litigation, and is well within the range of negotiated settlements in similar ERISA cases. Moreover, the Settlement also provides for an independent consultant to review the investment options in the Plan and for other prospective relief.

For the reasons set forth below, the Settlement merits preliminary approval so that the proposed Settlement Notices can be distributed. Among other things:

---

[1] All capitalized terms have the meaning assigned to them in Article 2 of the accompanying Settlement Agreement.

[2] Defendants dispute the allegations and deny liability for any alleged ERISA violations.

- The Settlement was negotiated at arm's length by experienced counsel, with the assistance of well-respected mediator, Retired Judge Layne Phillips;

- The monetary relief is significant, and compares favorably to settlements in other cases;

- The Settlement provides for automatic distribution of the settlement funds to the accounts of Current Participants in the Plan, and for a simple claim form to be submitted to Former Participants, which allows them to elect either to roll their distribution into another retirement account or to receive a check;

- For a period of no less than three years from the Settlement Agreement's effective date, Defendants will retain an unaffiliated investment consultant to provide an annual evaluation of the Plan's investment lineup and review the Plan's investment policy statement, among other prospective relief;

- The Class Release is appropriately tailored to claims that arise out of, or are related to, the same nucleus of facts alleged in the original Complaint and operative First Amended Complaint;

- The proposed Settlement Notices provide fulsome information to Class Members about the Settlement, and will be distributed via first-class mail;

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have and appear at the final approval hearing; and

- The Settlement treats all Class Members fairly and equitably.

Accordingly, Plaintiffs respectfully request that this Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Settlement

Notices and authorizing distribution of the Notices; (3) certifying the Settlement Class (which mirrors the monetary relief class previously certified by the Court); (4) scheduling a final approval hearing; and (5) granting other relief as set forth in the proposed Preliminary Approval Order. This motion is not opposed by Defendants.

# BACKGROUND

## I.   PROCEDURAL HISTORY

### A.   Nature of the Claims

Plaintiffs filed their Class Action Complaint on October 7, 2015 on behalf of themselves and the Plan, as well as on behalf of participants and beneficiaries of the Plan during the relevant time period. See *ECF No. 1*. Plaintiffs later filed their First Amended Complaint on January 6, 2016, which remains the operative complaint. See *ECF No. 28 ("FAC")*. The gravamen of the FAC is that the Plan's fiduciaries imprudently managed the Plan's investments, and maintained a Plan lineup consisting exclusively of funds managed by entities affiliated with the Plan sponsor, AAM-LP, without considering alternative investments from other companies that were less expensive and performed better in many cases. *Id. ¶ 5*. Based on the allegations in the FAC, Plaintiffs assert claims for (1) breach of the fiduciary duties of prudence and loyalty (Count I); failure to monitor fiduciaries (Count II), and equitable relief (Count III).

### B.   Defendants' Motion to Dismiss

On February 5, 2016, Defendants moved to dismiss the FAC. *ECF No. 32*. On August 5, 2016, the Court granted in part and denied in part Defendants' motion to dismiss. Specifically, the Court granted Defendants' motion as to Count III, and dismissed certain non-fiduciary employer defendants. *ECF No. 61 at 14-16*. The Court denied Defendants' motion with respect to all other claims. *Id. at 16*. The remaining Defendants include AAM-LP, AAM-LLC, the Committee,  and John Maney.

## C.     Discovery

During the course of the litigation, the Settling Parties engaged in substantial discovery. This included (1) production of over 160,000 pages of documents by Defendants, (2) production of additional documents by the Class Representatives, (3) production of documents by non-parties,[3] (4) seven depositions of defense fact witnesses, (5) depositions of each of the named Plaintiffs, and (6) one third-party fact witness deposition. *Settlement Agreement ¶ 1.5; Richter Decl. ¶¶ 11-14*. In addition, the Settling Parties also exchanged reports from their respective experts, including three reports from Plaintiffs' experts (Ian Ayres, Ph.D., Steve Pomerantz, Ph.D., and Marcia Wagner, Esq.) and four reports from Defendants' experts (Randolph Bucklin, Ph.D., Russell Wermers, Ph.D., Raymond Kanner, and Kristen Willard, Ph.D.) *Richter Decl. ¶ 15*. All seven experts were deposed by counsel for the Settling Parties. *Id.*

## D.     Plaintiffs' Motion for Class Certification

In the midst of fact discovery (but prior to expert discovery), Plaintiffs moved for class certification on February 14, 2017. *See ECF No. 79.* On June 15, 2017, following a hearing on the motion, the Court granted Plaintiffs' motion in an Order conditionally certifying two classes under Fed. R. Civ. P. 23(b)(1): one class seeking monetary relief, and a subclass seeking injunctive relief. *ECF No. 108 at 19*. Following supplemental briefing regarding the specific attorneys to represent the Class, the Court appointed the undersigned counsel as Class Counsel. *ECF No. 113*. On June 29, 2017, Defendants petitioned the Ninth Circuit for interlocutory review of the order certifying a class, which the Ninth Circuit denied on September 13, 2017.

---

[3] Document subpoenas were served on Charles Schwab & Co., Inc. (the Plan's recordkeeper), Latham and Watkins LLP (the Plan's outside counsel for part of the Class period), Groom Law Group (the Plan's outside counsel following Latham and Watkins), and the Defined Contribution Institutional Investment Association.

### E.     Defendants' Motion for Summary Judgment

Defendants moved for summary judgment on August 25, 2017 on all claims. *ECF No. 131.* That motion was fully briefed by October 6, 2017. *See ECF Nos. 152-1, 163.* A hearing on Defendants' motion was scheduled for October 27, 2017. *ECF No. 126.* However, the parties reached a settlement-in-principle on October 24, 2017 and the Court subsequently vacated all pending case deadlines in this lawsuit. *ECF No. 171.*

## II.    OVERVIEW OF THE SETTLEMENT TERMS

### A.     Proposed Settlement Class

The Settlement Agreement calls for certification of the following Settlement Class:

> All participants and beneficiaries of the Plan at any time during the Class Period, excluding Defendants, their directors, and any employees with responsibility for the Plan's investment or administrative functions.

*Settlement Agreement ¶ 2.46.* This tracks the existing monetary relief class certified by the Court. *See ECF No. 108 at 19.*[4]  The Class Period is defined as the period from October 7, 2009 through December 26, 2017 (the date of this preliminary approval motion). *Settlement Agreement ¶ 2.14.* There are approximately 5,600 class members. *Richter Decl., ¶ 3.*

### B.     Monetary Relief

Under the Settlement, AAM-LP will pay $12,000,000 into a common settlement fund (the "Qualified Settlement Fund"). *Settlement Agreement ¶¶ 5.5, 5.6.* Following any deductions for Court-approved (a) attorneys' fees and costs, (b) class representative compensation, and (c) administrative expenses, the Net Settlement Fund will be distributed to the Settlement Class according to the following Plan of Allocation: First, an Average Account Balance will be calculated

---

[4] The Injunctive Relief Class certified by the Court was a subclass of the monetary relief class.

1   for each Authorized Former Participant and Current Participant based on their total
2   quarter-ending account balance invested in the Plan's core line up and self-directed
3   brokerage window for the period from October 7, 2009 through December 26, 2017
4   ("Average Account Balance"). *Id. ¶ 6.4.2*. The Average Account Balances for all
5   Authorized Former Participants and Current Participants will then be summed. *Id. ¶*
6   *6.4.3.* Finally, each Authorized Former Participant or Current Participant shall
7   receive a *pro rata* share of the Net Settlement Amount based on his or her
8   Average Account Balance compared to the sum of those Account Balances. *Id.*[5]
9   In other words, Settlement Class Members will receive a share of the Net Settlement
10   fund proportionate to their level of investment in the Plan relative to all eligible
11   Settlement Class Members.

12   Current Participants will have their Plan accounts automatically credited with
13   their share of the Net Settlement Fund. *Id. ¶ 6.5.2.* Allocations of the settlement
14   payment for each Current Participant will be made in accordance with and
15   proportionate to such Current Participant's investment elections then on file for new
16   contributions. *Id. ¶ 6.5.3.* If the Current Participant is no longer an active employee
17   or does not have an investment election on file, then the Current Participant's
18   settlement payments will be invested in the Plan's default investment option. *Id.*

19   Former Participants will be required to submit a claim form, which allows
20   them to elect to have their distribution rolled over into an individual retirement
21   account or other eligible employer plan, or to receive a direct payment by check. *Id.*
22   *6.6.* This is consistent with other settlements, and will minimize the portion of the
23   Settlement Fund paid as taxes and also minimize waste due to uncashed checks.
24   *Richter Decl., ¶ 4.*

25

26   _____
27   [5] If an Authorized Former Participant's *pro rata* share of the Net Settlement Amount
is less than $10.00, then that Authorized Former Participant's payment or pro rata
28   share shall be zero for all purposes. *Id. ¶ 6.4.3.*

C.     **Prospective Relief**

In addition to the monetary relief described above, the Settlement also provides for prospective relief. Specifically, for a period of no less than three years from the Effective Date, (1) the Plan shall retain the services of an unaffiliated investment consultant to provide an annual evaluation of the Plan's investment lineup and review the Plan's investment policy statement, *Settlement Agreement ¶ 7.1.1*; (2) AAM-LP shall have any revenue sharing amounts received by the Plan's recordkeeper (currently Charles Schwab & Co., Inc.) on investments held by Plan participants rebated to participants' Plan accounts, *id. ¶ 7.1.2*; and (3) the Plan's Investment Committee meeting minutes will include a description of the Investment Committee's rationale for the inclusion of any new Designated Investment Alternative in the Plan's investment lineup, *id. at ¶ 7.1.3*.

D.     **Review by Independent Fiduciary**

As required under ERISA, AAM-LP will retain an Independent Fiduciary to review the Settlement on behalf of the Plan. *Id. ¶ 3.1*; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003-39"). The Parties will provide the Independent Fiduciary with sufficient information to support the Independent Fiduciary's review and evaluation. *Settlement Agreement, ¶ 3.1.4*. The Independent Fiduciary will issue its report at least 30 days prior to the Fairness Hearing, so the Court may consider the report in determining whether to grant final approval of the Settlement. *Id. ¶ 3.1.2*.

E.     **Release of Claims**

In exchange for the relief provided by the Settlement, the Settlement Class will release Defendants and affiliated persons and entities from all claims:

> a)     That are or could be based on any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions or occurrences that were or could have been asserted in the Action (including any assertion set forth in

the Complaint or First Amended Complaint, or any other submission made by the Class Representatives, Class Members, or their expert witnesses or Class Counsel in connection with the Action) or in any other complaint, action or litigation, or that arise out of, or are related to, the same nucleus of facts alleged in the Original and the First Amended Complaint …;

      b)    That would be barred by res judicata based on entry by the Court of the Final Approval Order;

      c)    That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

      d)    That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

*Id. ¶ 2.42.*

### F.    Class Notice and Settlement Administration

The Class will be sent a direct notice of the settlement ("Settlement Notice") via U.S. Mail. *Id. ¶¶ 2.48, 3.3.1, & Exs. 3-4.* The Settlement Notices sent to Former Participants also will include a Claim Form enabling them to make the elections described above. *Id. ¶ 3.3.2 & Ex. 1.* The Settlement Notices provide information to the Settlement Class regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the Settlement; (4) Settlement Class Members' right to object to the settlement and the deadline for doing so; (5) the class-wide release; (6) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (7) the amount of any requested Class Representatives' compensation; (8) the date, time, and location of the final approval hearing; (9) Settlement Class Members' right to appear at the final approval hearing; and (10) the process for submitting claims (Former Participants only). *See id., Exs. 3-4.*

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post several documents (or links to documents) relating to the case,

including the First Amended Complaint, the Settlement Agreement and Exhibits thereto, the Settlement Notices, the Former Participant Claim Form, any Court orders related to the Settlement, and the Motion for Attorneys' Fees, Costs, Administrative Expenses, and Service Awards (when filed). *Id. ¶ 12.1*. In addition, the Settlement Administrator will establish a toll-free telephone call center facility that will provide callers the option to speak with a live operator if necessary. *Id. ¶ 12.2*.

### G.    Attorneys' Fees and Expenses

The Settlement Agreement provides that Class Counsel will file a motion for attorneys' fees, costs, and administrative expenses at least 30 days before the deadline for objections to the proposed Settlement. *Id. ¶ 8.1*. The Settlement Agreement provides that the appropriate amount shall be determined by the Court in its discretion and does not purport to establish a presumptively reasonable amount. *Id. ¶ 8.2*. However, in no event shall Class Counsel seek more than 25% of the Qualified Settlement Fund as attorneys' fees. *Id.*

In addition, the Settlement Agreement provides that the Class Representatives may seek Class Representatives' Compensation. *Id. ¶ 8.1*. The Settlement Agreement is not contingent on Court approval of any of the fees, costs, expenses, or compensation that may be requested. *Id. ¶11.3*.

### <u>ARGUMENT</u>

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Because it has been held "proper to take the bird in hand instead of a prospective flock in the bush ... unless the settlement is clearly inadequate, its acceptance and approval are preferable to

1  lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm's*
2  *Coop. v. DIRECTV*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation and quotation
3  marks omitted).

4  **I.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

5         In evaluating a proposed settlement, the district court's review is "limited to
6  the extent necessary to reach a reasoned judgment that the agreement is not the
7  product of fraud or overreaching by, or collusion between, the negotiating parties,
8  and that the settlement, taken as a whole, is fair, reasonable, and adequate to all
9  concerned." *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *4 (C.D. Cal. Feb.
10  16, 2017) (quoting *Officers for Justice*, 688 F.2d at 625). In doing so, the Court
11  "'ultimately consider[s] a number of factors, including: the strength of plaintiffs'
12  case; the risk, expense, complexity, and likely duration of further litigation; the risk
13  of maintaining class action status throughout the trial; the amount offered in
14  settlement; the extent of discovery completed, and the stage of the proceedings; the
15  experience and views of counsel; the presence of a governmental participant; and
16  the reaction of the class members to the proposed settlement.'" *Peel v.*
17  *Brooksamerica Mortg. Corp.*, 2014 WL 12589317, at *4 (C.D. Cal. Nov. 13, 2014)
18  (Staton, J.) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)).

19        However, at the preliminary approval stage, "because class members will
20  receive an opportunity to be heard on the settlement, a full fairness analysis is
21  unnecessary. Preliminary approval …[is] appropriate where (1) the proposed
22  settlement appears to be the product of serious, informed, non-collusive
23  negotiations, (2) has no obvious deficiencies, (3) does not improperly grant
24  preferential treatment to class representatives or segments of the class, and (4) falls
25  within the range of *possible* approval." *Peel*, 2014 WL 12589317, at *4 (internal
26  quotation marks and citations omitted). Here, each of the applicable factors weighs
27  in favor of preliminary approval of the Settlement.

28

A.    **The Settlement Was Obtained Through Serious, Informed, Non-Collusive Negotiations.**

The Settlement was obtained following a full-day mediation with retired Judge Layn Phillips. *Richter Decl. ¶ 17*. At all times, the negotiations were conducted at arm's length. *Richter Decl. ¶ 18*. Accordingly, this factor strongly weighs in favor of approval of the Settlement, as there is no evidence of any fraud or collusion. *See Peel*, 2014 WL 12589317, at *5 (finding this factor satisfied where settlement was reached before Hon. Diane M. Welsh (Ret.) of JAMS).

B.    **The Settlement Provides for Significant Monetary and Prospective Relief, and Falls within the Range of Possible Approval.**

In evaluating the terms of the settlement, "[t]he court's role is not to advocate for any particular relief, but instead to determine whether the settlement terms fall within a reasonable range of possible settlements, giving 'proper deference to the private consensual decision of the parties' to reach an agreement rather than to continue litigating. *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1133 (N.D. Cal. 2015), *aff'd,* 869 F.3d 737 (9th Cir. 2017) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial," *DIRECTV*, 221 F.R.D. at 527, Importantly, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* (internal quotation marks and citation omitted).

Here, the benefits of a $12,000,000 settlement outweigh the risks of pursuing a potentially greater, but uncertain, recovery. Even if Plaintiffs defeated Defendants' summary judgment motion and prevailed at trial—which they believe they could have—the Court could have awarded a wide range of damages to the class. *See In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("even a favorable judgment at trial may face post-trial motions and even if liability

was established, the amount of recoverable damages is uncertain.") Damages calculations relating to 401(k) investment offerings are the subject of significant uncertainty. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method of calculating the damage award, if any, for the participants' investment selection … claims"); *Tussey v. ABB, Inc.*, 850 F.3d 951, 958–61 (8th Cir. 2017), *cert. denied,* No. 17-265, 2017 WL 3594208 (U.S. Oct. 2, 2017) (remanding a second time, finding that the district court still did not adequately consider "other ways of measuring the plans' losses").

Plaintiffs' expert, Dr. Pomerantz, calculated total Plan-wide losses (including losses due to both allegedly excessive fees and investment underperformance) under four different models: two models based on comparisons to Vanguard index funds and two models based on comparisons to popular funds among large 401(k) plans. *See ECF No. 160-7 at 8, 78-85*. For three of those four models, the estimated losses fell within a relatively narrow range of between $39.5 million and 47.0 million (with the fourth model generating a higher estimate of $65.3 million). *Id*. Dr. Pomerantz also attempted to break out the losses due to excessive fees based on various scenarios, including comparisons to other plans (based on data from the Investment Company Institute) and comparisons to other popular funds and Vanguard index funds. *Id. at 85-87*.  Under most of these scenarios (each of which was subsumed within his "total Plan-wide losses" analyses and were not additive to those amounts), the estimated "excess fee" damages also fell within a relatively narrow range of between $15.2 million and $24.1 million (with the index funds comparison generating a higher excess fee estimate of $41.0 million). *Id*. Thus, the negotiated $12 million recovery exceeds 20-25% of the total estimated losses under the majority of Dr. Pomerantz's models, and a higher percentage if one were to look only at that portion of his analyses that focus on fees.[6]

---

[6] Defendants disputed Dr. Pomerantz's damages analysis (in addition to contesting liability), and argued that the investments in the Plan were objectively prudent and

-12-

1    This recovery falls well within the "range of possible approval." *Peel*, 2014
2    WL 12589317, at *4. *See generally In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d
3    706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have
4    typically "recovered between 5.5% and 6.2% of the class members' estimated
5    losses"); *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345, n. 19 (N.D. Tex.
6    2011) (approving class settlement "estimated at about 2 to 3 percent of the each
7    individual class member's total losses" based on the "risks involved in the
8    litigation"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350
9    (S.D. Fla. 2011) (recovery of 9 percent was reasonable); *In re Newbridge Networks
10   Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("[A]n agreement that
11   secures roughly six to twelve percent of a *potential* recovery ... seems to be within
12   the targeted range of reasonableness"). The average gross recovery is over $2,000
13   per Class Member. *Richter Decl. ¶ 5.*

14   Moreover, in addition to $12 million in monetary relief, the Settlement also
15   provides substantial prospective relief. As explained above, AAM-LP will retain an
16   independent investment consultant to review the Plan lineup and the Plan's
17   investment policy statement on an annual basis for a period of no less than three
18   years. *See Settlement Agreement ¶ 7.1.1.* As an added benefit, any revenue sharing
19   amounts received by the Plan's recordkeeper on investments held by Plan
20   participants will be rebated to Plan participants' accounts. *Id. ¶ 7.1.2.* Further, the
21   Plan's Investment Committee meeting minutes will include a description of the
22   Investment Committee's rationale for the inclusion of any new Designated
23   Investment Alternatives in the Plan's investment lineup. *Id. ¶ 7.1.3.* This additional
24   prospective relief further supports approval of the Settlement.

25

26   that the Plan suffered no losses. *See ECF No. 131-1 at 13-24; ECF No. 163 at 14-
27   17, 20-24.* Thus, proceeding further with the litigation would have "entail[ed] . . . the risk that Class Members would recover nothing at all." *Kmiec v. Powerwave
28   Techs., Inc.*, 2015 WL 12914343, at *5 (C.D. Cal. Dec. 4, 2015).

### C.   Plaintiffs' Case Faced Risks and Significant Expenses with Further Litigation

The relief that was negotiated represents a reasonable compromise in light of the risks of continuing the litigation. Although Plaintiffs believe there is strong legal and factual support for their claims, there is risk "inherent in taking any litigation to completion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007) (internal quotation marks omitted). This is illustrated by another recent case challenging the inclusion of proprietary funds in a 401(k) plan, which resulted in judgment following trial in favor of the defendants. *See Brotherston v. Putnam Investments, LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017) (granting defendants' motion for judgment on partial findings).[7]   Although the judgment in that case is on appeal to the First Circuit, the trial court's ruling in *Putnam* demonstrates the risks posed by a case such as this.

Even if Plaintiffs proved at trial that Defendants had breached their fiduciary duties, Defendants could nonetheless prevail if the Court found that the breach did not cause a loss to the Plan. This is precisely what happened in *Putnam*. The district court found that the plaintiffs "failed to establish a prima facie case of loss" at trial, despite making a persuasive showing that the fiduciaries were "no paragon of diligence" and demonstrated that the defendants had failed to monitor the plan's investments. *Putnam*, 2017 WL 2634361, at *12; *see also Leigh v. Engle*, 727 F.2d 113, 138–39 (7th Cir. 1984) (describing burden of proving defendants' profits as potentially "insurmountable"). Although Plaintiffs believe that they would have been able to prove losses to the Plan at trial, this risk was anything but hypothetical.

At the time of Settlement, Defendants' motion for summary judgment was pending. In their motion papers, Defendants cited *Putnam* repeatedly. Although Plaintiffs are confident that Defendants would not have prevailed on their motion,

---

[7] Nichols Kaster, PLLP also was appointed to represent the class in *Putnam*, and tried the case. *Richter Decl., ¶ 7.*

"successfully opposing [Defendants'] motion for summary judgment [would] not mean that the class had established liability or would obtain a favorable . . . verdict." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009). Absent a settlement, the parties would have to incur the risks and additional costs associated with a trial. *See Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1206 (C.D. Cal. 2014) (Staton, J.). With seven experts, "[t]rial no doubt would have included a great deal of expert testimony on these complex and difficult questions," *Kmiec*, 2015 WL 12914343, at *5, and could have easily lasted several weeks with an uncertain outcome.

Moreover, even if Plaintiffs had prevailed at trial and the Court found that Defendants' breached their fiduciary duties and caused the Plan to suffer losses, there is a strong likelihood that Defendants would have appealed such findings. Indeed, Defendants already sought interlocutory review of the Court's order granting class certification. *See Urakhchin v. Allianz Asset Management of America L.P.*, No. 17-80124, ECF No. 1-2 (9th Cir. June 29, 2017). Thus, at a minimum, Defendants "would undoubtedly have appealed certification if there were a final, adverse judgment." *Rodriguez*, 563 F.3d at 966. These risks and expenses of continuing the litigation weigh in favor of approval of the Settlement.[8]

### D.    The Parties Had Completed Discovery and Had a Thorough Understanding of the Case.

The stage at which the Settlement was reached further supports approval of the Settlement. Completion of discovery prior to settlement weighs in favor of court

---

[8] In assessing the strength of Plaintiffs' case, "a district court should neither judge the merits of the claims in dispute, nor compare the proposed settlement 'against a hypothetical or speculative measure of what might have been achieved by the negotiators.' 'Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice.'" *Bravo*, 2017 WL 708766, at *4 (quoting *Officers for Justice*, 688 F.2d at 625); *see also Officers for Justice*, 688 F.2d at 625 ("the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.").

approval because the parties are more likely to have "'arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'" *DIRECTV*, 221 F.R.D. at 527 (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.))). Further, completed discovery provides the court "'sufficient evidence to determine the adequacy of settlement.'" *Id*. (quoting 4 A. Conte & H. Newberg, Newberg on Class Actions, § 11:45 at 129 (4th ed. 2002))). Therefore, when, as here, a settlement follows "sufficient discovery and genuine arms-length negotiation" it is "presumed fair." *Id*. at 528 (citations omitted); *see also Dynabursky v. Alliedbarton Sec. Servs., LP*, 2016 WL 8921915, at *6 (C.D. Cal. Aug. 15, 2016) (Staton, J.) (finding parties had engaged in sufficient "formal and informal" discovery after Plaintiffs' counsel had reviewed certain documents and deposed key witnesses).

Here, the parties had completed extensive discovery, involving the production of more than 160,000 pages of documents by Defendants, additional productions by Plaintiffs and third parties, ten fact witness depositions (including defense witness depositions, Plaintiff depositions, and one third-party deposition), and seven expert depositions following an exchange of expert reports. See *Richter Decl. ¶¶ 11-15*. In addition, the parties had fully briefed Defendants' motion for summary judgment prior to the mediation, giving both sides a clear assessment of the record and the strengths and weaknesses of their respective cases. In short, both sides had done their homework, which contributed to a fulsome and fair end result.

### E.    The Class Representatives and Class Counsel Endorse the Settlement.

Both Class Counsel and the named Class Representatives have submitted declarations endorsing the Settlement in this case. *See Richter Decl., ¶¶ 4-9, 18; Urakhchin Decl. ¶¶ 4-6; Marfice Decl. ¶¶ 4-6.* This provides further support for preliminary approval of the Settlement.

-16-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

As this Court has repeatedly recognized, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Dynabursky*, 2016 WL 8921915, at *7 (citation and quotation marks omitted). Courts accord "great weight ... to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation, . . . [as] parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. 523, 528 (citation and quotation marks omitted). Notably, Class Counsel is this case also serves as court-appointed class counsel in several other ERISA cases, and has served as class counsel in several other types of class action cases as well. *Richter Decl. ¶¶ 19-21 & Ex. C.* Thus, Class Counsel's opinion that the Settlement is fair, reasonable, and adequate weighs strongly in favor of granting preliminary approval. In addition, both of the Class Representatives have indicated that they support the Settlement and are satisfied with the result that has been achieved. *Urakhchin Decl. ¶¶ 4-6; Marfice Decl. ¶¶ 4-6.* Accordingly, the Court should approve the Settlement and authorize distribution of the Settlement Notices, so that other Class Members also may express their opinions if they choose to do so.

**F.     The Settlement Treats All Class Members Fairly and Equitably.**

Finally, the Settlement treats all Class Members fairly. As noted above, according to the Plan of Allocation, all eligible Settlement Class Members will receive a pro rata share of the Qualified Settlement Fund based on their average account balance. *See supra at 6.* This ensures that each Class Member receives a settlement payment proportionate to their level of investment in the Plan relative to all eligible Class Members. *Id.*

**II.     THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED**

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable  manner to all Class

Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement to Settlement Class Members via first-class mail. *Settlement Agreement ¶ 3.3.1*. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The content of the Settlement Notices is also reasonable, as it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) (quoting *Churchill Village, L.L.C.*, 361 F.3d at 575). Among other things, the Settlement Notices "describe[] the nature of the action, summarize[] the terms of the settlement, identif[y] the … class[] and provide[] instruction on how to . . . object, and the proposed fees and expenses to be paid to Plaintiffs' counsel . . . among others." *Chao v. Aurora Loan Servs., LLC*, 2014 WL 4421308, at *6 (N.D. Cal. Sept. 5, 2014); *see also Spann*, 314 F.R.D. at 330 ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members." (citation and quotation marks omitted)). To the extent that Class Members have any questions, they may obtain additional information through the settlement website or telephone support line. *See Settlement Agreement ¶¶ 12.1, 12.2*. This notice program is more than sufficient to meet the requirements of Fed. R. Civ. P. 23 and Due Process, and should be approved. *See Munday v. Navy Federal Credit Union*, 2016 WL 7655807, at *10-11 (C.D. Cal. Sept. 15, 2016) (Staton, J.) (approving similar notice plan).

### III.   THE CERTIFIED CLASSES SHOULD BE AMENDED FOR SETTLEMENT PURPOSES

In its Class Certification Order the Court certified two classes: one for monetary relief and another for injunctive relief. *See ECF No. 108 at 19.* For the same reasons the Court certified these two classes, Plaintiffs request that the Classes be consolidated and amended to include the following:

> All participants and beneficiaries of the Plan at any time during the Class Period, excluding Defendants, their directors, and any employees with responsibility for the Plan's investment or administrative functions.

Given the terms of the Settlement (which provide uniform relief to all Class Members), Plaintiffs believe separate classes for monetary and injunctive relief are unnecessary. Moreover, the two classes the Court certified in its Class Certification Order did not identify an end date to the Class Period. Because the Class Period is now defined for settlement purposes, the Settlement Class definition should reflect the new Class Period.

### IV.   DAHL ADMINISTRATION SHOULD CONTINUE TO PROVIDE ADMINISTRATIVE SERVICES IN CONNECTION WITH THE SETTLEMENT

Finally, this Court should approve Dahl Administration, LLC ("Dahl") as the Settlement Administrator pursuant to Paragraph 2.44 of the Settlement Agreement. Dahl was the lowest bidder among several settlement administration firms in a competitive bidding process. *Richter Decl. ¶ 22.* It has extensive experience administering class action settlements, and was previously was appointed by the Court to distribute the class notices that were mailed following the Court's class certification decision. *Id.* Dahl has performed all duties that have been required of it to date, *id.*, and it is logical that it would continue to serve as the administrator for purposes of Settlement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to enter an order: (1) preliminarily approving the parties' Class Action Settlement Agreement, (2) approving the proposed Settlement Notices and authorizing distribution of the Notices by Dahl, (3) certifying the proposed Settlement Class, (4) scheduling a final approval hearing, and (5) granting such other relief as set forth in Plaintiffs' proposed Preliminary Approval Order submitted herewith.

Dated: December 26, 2017

**NICHOLS KASTER, PLLP**

By: _/s/ Kai H. Richter_

NICHOLS KASTER, PLLP
Paul J. Lukas, MN Bar No. 22084X*
lukas@nka.com
Kai Richter, MN Bar No. 0296545*
krichter@nka.com
Carl F. Engstrom, MN Bar No. 0396298*
cengstrom@nka.com
Jennifer Lee, NY Bar No. 4876272*
jlee@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
*admitted pro hac vice

KABATECK BROWN KELLNER LLP
Richard L. Kellner, CA Bar No. 171416
rlk@kbklawyers.com
644 South Figueroa Street
Engine Company No. 28 Building
Los Angeles, CA  90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

ATTORNEYS FOR PLAINTIFFS AND THE CLASS

-20-